## SUPREME COURT.

THE NEW YORK AND HARLEM RAILROAD COMPANY agt. THE FORTY-SECOND STREET AND GRAND STREET FERRY RAILROAD COMPANY, AND OTHERS.

A *railroad franchise* may be conferred upon a *corporation*. It follows that the legislature can *constitutionally* bestow grants of this kind. The constitution contains no prohibition and no restrictions on this power.

There is no constitutional provision that prohibits railroad franchises being conferred upon or exercised by *individuals*, nor does there appear to be any objection to making such rights *assignable*.

No question can now arise as to the power of the legislature to authorize the construction of a railroad upon any of the streets of the city of New York, without any compensation to the corporation, or to the owners of property fronting on the street, and without the *assent* of the corporation, but even in direct opposition to the wishes of the corporation. (*The Case of People* agt. *Kerr*, 25 *How. p.* 258, *Court of Appeals, settles this point.*)

If a railroad corporation construct their road in the city of New York, under an act of the legislature, *without the assent of the city corporation*, conceding such assent to be necessary, another railroad corporation that claims to be injured by the construction of the former road, cannot take advantage of such want of assent of the city corporation, as they cannot be injuriously affected thereby; and the requirement of such assent is not for its benefit.

The legislature having by the act of 1860, authorized the construction of the defendant's railroad, and having prohibited the city corporation from giving any assent to any company deriving any authority under the general railroad act of 1850, to construct a railroad on the route of the defendant's road, must be considered as having repealed the requirement of such assent for a road on that route.

There is no privilege or right directly granted to the plaintiffs, of the sole and exclusive use of Fourth avenue for a railroad track. With reference to the defendant's road *crossing* plaintiffs' track, it is not such an infraction of private property as to call for a preliminary injunction.

*General Term, January,* 1867.

*Before* BARNARD, SUTHERLAND *and* CLERKE, *Justices.*

THIS is an appeal from the judgment of the special term of this court dissolving an injunction obtained by the plaintiffs against the defendants. The case at special term is reported in 26 *How. Pr. R.,* 68, and is there stated as follows:

The plaintiff, a railroad corporation, has a railroad running through certain streets in the city of New York, and in

its course passing through Fourth avenue, between Twenty-third and Fourteenth streets.

The defendants are proprietors of a railroad running from Fourth avenue west on Twenty-third street, and from Fourth avenue east on Fourteenth street. The defendants propose and are about to connect their railroads on Twenty-third and Fourteenth streets, by laying connecting tracks on Fourth avenue, between Fourteenth and Twenty-third streets. Both branches of the defendants' road have a double track, and the plaintiff has also a double track, and the defendants propose to lay their track in Fourth avenue—one track on each side of the plaintiff's tracks. This would leave the plaintiff's double track in the centre of the street, and a single track of the defendants on either side. This would also leave twelve feet between the track of defendants and the curb on each side. This proceeding is complained of by the plaintiff as interfering with its use of its own property, in that it will obstruct the easy access to the plaintiff's cars from the sidewalks. The plaintiff also alleges that it cannot allow the defendants to use its (the plaintiff's) tracks, because its tracks are already fully occupied with the plaintiff's own business. The plaintiff also assumes certain exclusive rights to the use of Fourth avenue for a railroad, under its agreement with the city, and claims that no right to lay a track in the street can be granted, unless with the consent of the city, or payment to the city therefor.

The defendants had commenced laying their track when the plaintiff commenced this action to restrain their so doing, and obtained a preliminary injunction. This injunction the defendants now move to dissolve.

HORACE F. CLARK, *for appellants.*

I. The New York and Harlem Railroad Company having laid their tracks through the Fourth avenue, in pursuance of their charters, and with the permission of the municipality of New York, are clearly entitled to have the use and enjoy-

ment of their railroad protected against any invasion or interference not authorized by law.

II. The railroad being constructed by defendants, materially interferes with the enjoyment by the plaintiffs of their railroad, by running parallel with it, in such close proximity as to prevent passengers from entering and leaving the plaintiffs' cars with safety, and also by intersecting and crossing the plaintiffs' track at Fourteenth street and at Twenty-third street. (*See Supplemental Complaint, fols.* 33 *to* 37 ; *Affidavit of Barton, fol.* 67 ; *Affidavit of Burchill, fol.* 72.)

III. The burden is upon the defendants of showing their legal authority to commit the invasions complained of, and they have failed to show such authority.

1. It is admitted by the answer that the construction complained of, is being made by the Forty-second Street and Grand Street Ferry Railroad Company (*Answer, fol.* 30).

2. It is also admitted that such company is a corporation, created and organized under the general railroad act, passed April 2d, 1850.

3. By the 5th subdvision of section 28 of that act, it is provided that nothing in the act contained shall be construed to authorize the construction of any railroad not already located in, upon or across any street in any city, without the assent of the corporation of such city, and such assent has not been obtained. (*Sup. Com. fol.* 31 ; *Affidavit of Mayor Opdyke, fol.* 74, *p.* 19.)

4. And by the fourth section of the act of April 17, 1860, set up in the answer, the mayor and corporation of New York, are prohibited from giving any assent to any company organized under the railroad act of 1850, to construct any railroad upon the avenue in question.

Hence the defendants, the corporation, lacking the corporate power to construct the railroad in question, are acting without authority of law.

IV. But the Forty-second Street and Grand Street Ferry Railroad Company, claim that they are the assignees of the franchises alleged to have been granted to Conover and his associates, by the act of April 17, 1860, and that such alleged

assignment has conferred upon that company the power to construct the railroad in question.

V. Such alleged assignment, if made, has not conferred upon them the powers claimed.

There is nothing contained in the act of April 17, 1860, which can give to an assignment from the grantees named in that act, the legal effect of conferring upon a railroad company, organized under the act of 1850, a corporate power, not only not conferred, but expressly withheld from it by its organic law.

Every corporation created under the general railroad law of 1850, lacks the corporate capacity to take or use a grant of the right to construct a city railroad not located prior to the passage of that act, without the consent of the municipality. To give effect to the restriction in the act of 1850, as well as to the power to assign, alleged to be contained in the act of 1860, the latter must be construed to mean that the franchises granted may be exercised by the assigns of the grantees, provided such assigns be persons other than a corporation created under the general railroad act.

Any other construction would render the restriction totally ineffectual, or place it in the power of the grantees to evade it, and would, therefore, violate the well settled rules for expounding statutes.

VI. Assuming for the moment, the validity of the act of April 17, 1860, it is clear that the railroad authorized by that act to be constructed, was designed to be placed in respect of its construction and operation, under municipal control. (See § 2 of the Act of 1860.)

VII. It is also clear that the legislature did not intend that other railroad tracks upon the streets or avenues mentioned in the act of April 17, 1860, should be intersected or crossed, without compensation being made therefor. (See § 3 of the Act of 1860.)

In any aspect of the case, the plaintiffs are clearly entitled to an injunction against the crossing of their tracks at Fourteenth street and Twenty-third street, no compensation

therefor having been made. (§ 3 *of Act of* 1860 ; *Supplemental Complaint, fols.* 33, 56, 57.)

VIII. The act of April 17, 1860, is unconstitutional and void.

The decision of the court of appeals, in the case of *The People* agt. *Kerr*, is relied upon as establishing the validity of these acts of 1860.

The only point decided in that case is, that the private lot owners and the corporation of New York, as the proprietors of the fee of the streets, are not entitled to compensation for the use of a street for a city railway under a legislative grant.

No question was raised as to the invalidity of a grant, for the causes for which it is now assailed. Nor did the case present the question as to the right of municipal control.

This act of April 17, 1860, purports to confer upon Conover and his associates, a perpetual and irrepealable franchise, with the power of eminent domain, and to authorize them to select other persons by whom that franchise may be enjoyed, and that power may be exercised, free from legislative control.

This is an attempted delegation of the sovereign power of the state to private individuals, for private uses, and is violative of our scheme of state government, which vests the legislative power of the state in the senate and the assembly, and authorizes its delegation in no instance save to boards of supervisors, for purposes of local administration ( *Cons. of* 1846, *Art.* 3, §§ 1 *and* 17).

Admitting that the legislature may intrust the power of eminent domain to individuals, to be exercised for the public good, it is denied that they can delegate to individuals the power of selecting others by whom these great powers are to be exercised.

The framers of the constitution of 1846, provided a scheme for the bestowal of charters by general and special acts, to be at all times subject to alteration or repeal (*Art.* 8, § 1).

This legislation of 1860 is utterly subversive of that

scheme, and is, therefore, violative of the constitutional rights of the people.

IX. The actual passage of the act of April 17, 1860, is put in issue by the complaint. The fact is established, that after the governor's veto of the bill, it received the assent of two-thirds of the members present. The question is, whether the enactment is valid, unless the bill received the votes of two-thirds of the members elected.

X. The city of New York, under her ancient charters, has the right to order and regulate the use of the streets. Whether this right is superior or subject to legislative control, if an open question, need not be considered; for the general railroad act of 1850, as well as the act of 1860, subject the railroad in question to municipal control.

XI. The act of April 17, 1860, is unconstitutional, so far as it invades the rights of property of the New York and Harlem Railroad Company, without providing just compensation.

The property of railroad companies existing under state charters, is not beyond the pale of constitutional protection.

The power reserved to repeal, alter or modify the charters of such company, is not a license to take their property without compensation.

XII. The preliminary injunction had been violated, before the hearing of the defendants' motion to dissolve. The evidence of that violation was before the court, and proceedings for the contempt had been instituted, and the contempt had not been purged when the motion to dissolve was heard.

The defendants were, therefore, not entitled to a hearing upon their motion to dissolve.

XIII. The injunction should be reinstated till the hearing.

MOSES ELY and
HAMILTON W. ROBINSON, *for respondents.*

I. None of the charters or acts relating to the plaintiffs' road, confer upon them any exclusive privilege of running a railroad on Fourth avenue, nor are they, by virtue of their

enjoyment of the corporate franchise right to run such road, possessed of any private property in the street, on account of which they can claim compensation for any consequential damages they may sustain from the creation, location and running, in accordance with legislative authority, of another road which may incommode them, and divert and injure their business.

All questions of the expediency and public necessity of the act, and of the extent of powers to be conferred, or to which they shall interfere with prior grants (not secured as exclusive by legislative contract) of a similar character, rest entirely in the discretion of the legislature. (*Charles River Bridge Co. agt. Warren Bridge Co.* 11 *Peters*, 420; *Mohawk Bridge Co.* agt. *The Utica and Schenectady Railroad Co.* 6 *Paige*, 564; *Westchester Railroad Co.* agt. *Harlem, &c. Railroad Co. reported in N. Y. Transcript, July* 23d, 1863; *Matter of Hamilton Avenue*, 14 *Barb.* 405; *Thompson* agt. *N. Y. and Harlem R. R. Co.* 3 *Sandf. Ch.* 625; *Auburn and Cato Plank Road Co.* agt. *Douglass*, 5 *Seld.* 444; 3 *Kent's Com.* 9th ed. note to p. 459; 2 *Green. Cruise*, 56, *part 3d, title Franchise*, § 29; *Albany Northern R. R. Co.* agt. *Brownell*, 24 *N. Y.* 345.)

II. Whatever might have been the rights conferred under a continuing charter, exempt from legislative interference, that which the plaintiffs accepted, granted their corporate rights and franchises, including their entire right to maintain and operate their railroad, subject to the express right and power of the legislature to alter, modify and repeal all those privileges. (*Sess. Laws*, 1831, *p.* 323; *Id.* 1835, *p.* 87; *Id.* 1859, *p.* 914.)

Their very existence, including all corporate powers and franchises, have always been held on sufferance, while the defendants are the absolute donees of all the rights and privileges conferred by the act of 1860 (*Chap.* 515, *Sess. L.* 1860, *p.* 1050.)

Whatever rights the plaintiffs may have possessed by legislative authority, to operate a railroad in the Fourth avenue, between Fourteenth and Twenty-third streets, or to do any

488          NEW YORK PRACTICE REPORTS.

N. Y. and Harlem Railroad Co. agt. The Forty-second Street, &c., Railroad Co.

act inconsistent with the exercise of the full powers and privileges granted by the first section of chapter 515 of the laws of 1860, they were *pro tanto*, repealed by section five of that act, which is the later expression of the will and intent of the legislature.

Instead of the rights and powers thereby conferred on the defendants, being in any respect subordinate to those of the plaintiffs, the contrary is the case, as to all their corporate powers and franchises, that can be exercised in the conveyance of passengers, within the space between Fourteenth and Twenty-third streets, or elsewhere. And instead of the plaintiffs' being entitled to any injunction against the defendants' exercise of the powers specified in the statute, the plaintiffs convenience must yield, so as to enable the defendants to exercise their paramount rights and privileges as conferred by the latter act (*Westchester R. R. Co.* agt. *Harlem Bridge, &c. R. R. Co. supra*).

III. The plaintiffs possess no independent powers as grantees of the corporation of the city of New York.

The rights of the corporation in the Fourth avenue, obtained under the acts of 1813, are "*publici juris*," and subject to legislative control, and they are without power to confer any rights of property in the street, or to authorize the running of a railroad, or the creation of any franchise. (*Davis* agt. *The Mayor, &c.* 14 *N. Y.* 506 ; *People* agt. *Kerr*, *in Court of Appeals*, 25 *How. Pr.* 258 ; *Act* 1860, *chap.* 10, *Sess. Laws, p.* 16 ; *Act of* 1860, *chap.* 515, § 4, *Sess. Laws, p.* 1050.)

The capacity of the plaintiffs to take or exercise any such rights, is limited by their charter (1 *R. S.* 600, § 3).

IV. The grant to the defendants of the right of constructing and operating their railroad, as authorized by the act of 1860 (*chap.* 515), has received a judicial construction and confirmation of its constitutionality, in the case of *The People* agt. *Kerr* (*supra*), relating to a similar grant contained in chapter 513, of the laws of 1860, and their right to run upon and use the streets and avenues, the title to which is in the corporation (as is the Fourth avenue), is affirmed.

V. It is wholly immaterial whether the defendants are to be regarded as a corporation or a joint stock association, as the right to lay, construct and operate the road, is given the grantees and their assigns (see act), and the right of eminent domain delegated to them, may be exercised, as is well established, either by a corporation or private individuals. (*Bloodgood* agt. *Mohawk and Hudson R. R. Co.* 18 *Wend.* 9; *See resolution of Court of Errors, p.* 75; *Opinion of Judge* EMOTT *in People* agt. *Kerr, Mss.; Bank of Middlebury* agt. *Edgerton,* 30 *Vt.* 182.)

The unauthorized exercise of corporate powers is the usurpation of a franchise, and the attorney general alone can interfere, and that by *quo warranto.* (*Code,* § 432; *The People, &c.* agt. *Tibbits, &c.* 4 *Cowen,* 368.)

VI. The case shows that the defendants, instead of imitating the selfish and pretentious conduct of the plaintiffs, have consulted their wishes, in omitting to run upon, intersect and use this portion of the railroad track, as authorized by section three, of chapter 515 of the laws of 1860; that compensation which was conceded to be liberal, was offered by them for such privilege and declined, and they have adopted the other alternative of laying another track on the most approved plan, and using the utmost care to do no unnecessary injury to or destruction of the privileges enjoyed by the plaintiffs.

The objection taken is not to the mode in which defendants exercise their right, but to its being exercised at all. No objection can be urged to the mode proposed, that is not fatal to the right.

VII. The charge of contempt made against the defendants was no answer to the motion, which was a matter of right. (*Smith* agt. *Reno,* 6 *How. Pr.* 124; *Field* agt. *Hunt,* 22 *Id.* 330.)

VIII. The right of the defendants to lay their railroad track on the Fourth avenue, between Fourteenth and Twenty-third streets, alongside of that of the plaintiffs, in the manner they propose, is clear as against any of the pretensions

of the complaint, and the order dissolving injunction ought to be affirmed, with costs.

*Additional points for defendants :*

I. The complaint states no case upon which an injunction against the defendants, restraining them from crossing the railroad track of the plaintiffs should be granted.

1. The case stated is not of any attempt to cross the plaintiffs' tracks without compensation. It alleges no damage from that act, for which compensation ought to be made. The matter for which claim is made is *damnum absque injuria.* No injunction is prayed for until such compensation is made, but an entire and absolute prohibition of defendants' road is claimed on other grounds, which repudiate the defendants' right, and this was the injunction asked.

2. The act of April 17th, 1860, chapter 515, requires no compensation to be made for merely crossing the plaintiffs' track. It is for "running upon, intersecting or using," that the act of 1860, page 1051, section 3, awards compensation. There is a distinction, which is observed in the statutes, between "crossing" and "intersecting."

The general railroad act of 1850, section 28, subdivision 6, authorizes the "crossing, intersecting, joining and uniting."

For purposes of intersection, it requires parties to unite with the owners of the new railroad, in the intersection and connections, and to grant the proper facilities.

For intersection, compensation is to be made under both statutes, but not for "crossing."

Intersecting is rather synonymous with "joining and uniting," and contemplates some such union of the two roads, by which the cars of one may, to some extent, be run on the track of the other.

The plaintiffs' chartered rights being subject to "alteration, modification and repeal," by the legislature, they had no right of property in the Fourth avenue, over which their railroad tracks are laid.

These being laid in a public highway, in or over which the plaintiffs had only an easement and right of way, no

property of theirs is taken, and they sustained no injury for which they are entitled to any compensation by the mere crossing of their track by the defendants.

*(a)* The plaintiffs allege no damage or inconvenience for which compensation should be made, as likely to result from the mere crossing of their railroad tracks in the mode contemplated.

The answer *(fol.* 36) and affidavits *(fols.* 59, 60), expressly deny that any such damage would ensue. This was uncontradicted.

*(b)* The mere crossing of the track of one railroad laid in a public highway by the track of the other, without substantial injury to the track first laid, constitutes no ground for an injunction. *(Brooklyn and Jamacia R. R. Co.* agt. *The Brooklyn Central R. R.* 33 *Barb.* 420 ; *Tuckahoe C. Co.* agt. *Tuckahoe R. R. Co.* 11 *Leigh* [*Va.*], 42 ; *Albany Northern R. R. Co.* agt. *Brownell,* 24 *N. Y.* 345 ; *Judge* INGRAHAM'S *Mss. opinion in The Sixth Avenue R. R. Co.* agt. *Kerr and others.*)

*(c)* The compensation that is to be made by section 3, of the act of 1860, chapter 515, is only required to be paid in advance if it is for " property taken," in which there is an absolute ownership.

In such a case this statute insures such compensation *(Bloodgood* agt. *The Mohawk and Hudson R. R. Co.* 18 *Wend.* 9).

But if it is a mere requirement as compensation for disturbance in a privilege enjoyed through public favor, which the legislature might have revoked, the statute merely creates a right of action for the pecuniary consideration. Its prepayment is not necessary as a condition precedent. *(See Judge* INGRAHAM'S *opinion, supra.*)

*(d)* No case of unauthorized or noxious nuisance, or of irreparable mischief or of insolvency, is stated or pretended as grounds for a preliminary injunction. *(Mohawk Bridge Co.* agt. *Utica and Schenectady R. R. Co.* 6 *Paige,* 554 ; *Hodgkinson* agt. *Long Island R. R. Co.* 4 *Ed. Ch.* 411 ; *Wiggins*

agt. *Mayor, &c. of N. Y.* 9 *Paige,* 16 ; *Marshall* agt. *Peters,* 12 *How. Pr.* 218.)

For any injury resulting from crossing their tracks, the plaintiffs have ample remedy at law.

*(e)* But even if any damages were assessable, the matter is so trivial, and the effect of an "injunction so disastrous, that the court will refuse an injunction, or at most, require security to be given for ascertaining and paying any damages that may be awarded *(Jones* agt. *Great Western R. R. Co.* 1 *R. W. C.* 684).

II.  The objection that the defendants, " The Forty-second street and Grand street Ferry Railroad Company,". being a corporation formed under the general railroad law of 1850, cannot, under the assignment of the grant made by the act, chapter 515 of the laws of 1860, complete and operate the railroad specified in their charter and in that grant, because they had not obtained the consent of the corporation of the city of New York, is untenable.

1.  The act of April 2, 1850, is an enabling statute, for the creation of corporations for the general purposes specified in the first section.

By section 28, subdivision 3 (after authorizing the construction of railroads through streets and highways), it was provided that nothing in the act should be construed " to authorize the construction of any railroad not already located in, upon or across any streets in any city, without the assent of the corporation of such city."

By the act of 1854, chapter 140, section 1, where the railroad commenced and ended in the city, it was further required that the consent of a majority in interest of the owners of the property upon the streets, should be first had and obtained.

But by the act relative to railroads in the city of New York, passed January 30, 1860, chapter 10 *(Laws of* 1860, *p.* 16), it was provided that it should not be lawful thereafter to lay, construct or operate any railroad in, upon or along any of the streets or avenues of the city of New York, wherever such railroad commenced or ended, except under

the authority and subject to the regulations and restrictions which the legislature might thereafter grant and provide, and all inconsistent acts were repealed.

So far, therefore, as the consent of the corporation of the city of New York, to the construction of any railroad in, upon or over the streets or avenues of the city was concerned, their power over the subject was entirely revoked, and no railroad could thereafter be laid, constructed or operated, except under the authority of the legislature, and subject to the regulations and restrictions they might thereafter grant and provide.

The legislature, by their several acts of 1854, chapter 140, and of 1860, chapter 10, could only have had reference to railroads attempted to be constructed by corporations deriving their authority to construct and operate their road under the general railroad act.

It could not have had reference to any railroad incorporations, which might thereafter be authorized under a special law emanating from the same authority, which would contain its own provisions and restrictions. The rights of existing railroad companies were protected by the exception.

Nor to any attempted action of the corporation authorizing the construction of any railroad in then streets or avenues of the city, as they had no such power. It could only have been intended to affect and guard against corporations formed or to be formed under some general law, such as the general railroad act, and restrain them in these particulars. None of the numerous railroads beginning and ending in cities, had been incorporated by any special act.

The limitation (contained in section 28, subdivision 5), upon the authority conferred by the general railroad act, so far as it required any assent of the corporation of the city of New York, to the construction of any railroad in that city, was entirely removed by the act of 1860, chapter 10, and since then no such assent is in any case either necessary or of any avail.

2. So far as this railroad is concerned, it is expressly authorized. The railroad of the defendants now being oper-

494    NEW YORK PRACTICE REPORTS.

N. Y. and Harlem Railroad Co. agt. The Forty-second Street, &c., Railroad Co.

ated upon the route specified in the act of 1860, chapter 515, has been constructed under that legislative authority, and it is made the duty of the corporation to promote its construction and protect its operation. The supplementary "regulations" rendered necessary by chapter 10, of the laws of 1860, to carry into effect the powers of a corporation under the general railroad act, to construct and operate a railroad through the streets and avenues of the city of New York, have been supplied by this act.

III. The act of 1860, chapter 515, rendered the grant assignable.

The parties designated as "assigns," are not limited to private persons.

The term fairly included a railroad corporation having powers of a like character.

Corporations to the extent of their powers, come within the meaning of " persons."

The corporate powers of the defendants, "The Forty-second street and Grand street Ferry Railroad Company," were these precise powers.

There is no incongruity in the arrangement by which the grantees parted with their interests to that railroad company, and it became the assignee of a railroad authorized by law, independent of control by the corporation, except by ordinance.

The paramount object contemplated by the legislature, that this railroad should be constructed and operated for the public good, has been accomplished, and that too, through the agency of the very grantees named in the act, and their assigns.

IV. The only supervision allowed by the act of 1860, to the corporation of the city of New York, is through such reasonable rules and regulations in respect thereto, as the common council may, from time to time, by ordinance prescribe. No such ordinance has been passed.

V. The rights of the city of New York in the streets and avenues thorugh which this railroad runs, are only such as are conferred by the laws of 1813, and are *publici juris*. No

N. Y. and Harlem Railroad Co. agt. The Forty-second Street, &c., Railroad Co.

compensation is necessary to be made to them (*The People* agt. *Kerr*, 25 *How.* 258).

Even if this were otherwise, the plaintiffs cannot urge that objection, or claim any right to represent the interest of the corporation.

VI. There was nothing inconsistent with any constitutional prohibition, in making the grant assignable.

Nearly every act relating to ferries, in the statute books of the state, makes such interest assignable. So, also, do various laws conferring franchises of a like character in wharves, turnpikes, dams, &c (*Bank of Middlebury* agt. *Edgerton*, 30 *Vt.* 182).

Such interests may be made assignable by express statute.

The authority vested in the " grantees and their assigns," to acquire the right to run upon, intersect or use, part of any other railroad track, requires that the proceedings for that purpose should be taken by the parties in interest.

The object of the statue is, to render the actors at all times definite and certain.

The power of the legislature to delegate that authority to private persons, is well settled (*Bloodgood* agt. *Mohawk and Hudson R. R. Co.* 18 *Wend.* 9).

There is nothing in the language or spirit of the constitution which prohibits this mode of designating the parties who are to initiate the proceedings (*Buffalo and N. Y. R. R. Co.* agt. *Brainard*, 5 *Seld.* 110).

The authority of the legislature, where not restrained by the constitution, is paramount as to all matters within the scope of civil government, and such restrictions upon this power, resting in mere implication, can only exist in some strong reason of necessity.

*By the court*, BARNARD, J. All the questions in this case are capable of being resolved into the following :

Whether the legislature had authority to pass this act of April, 1860 ? In this connection it is contended it had not, because it would tend to impair the previous franchise granted to the plaintiffs, and because a franchise of the char-

acter granted by the act of April 17, 1860, can only be granted to a corporation for a specified period, and cannot be made assignable; and that as the general railroad act provides for the incorporation for railroad purposes, there is no necessity for special legislation. Whether the defendants being incorporated under the general railroad act, the fifth subdivision of which provides that the act shall not authorize the construction of any railroad on any street in any city, without the consent of the corporation, can they, not having obtained such consent, construct their railroad? And in this connection arises the question, whether the plaintiffs can take advantage of such want of consent, and whether the defendants cannot construct their road under the assignments to them, by the parties named in the act of April 17, 1860, of their rights thereunder?

Whether the defendants' road does not so impair the franchise of plaintiffs, as to come within the constitutional prohibition against taking private property without due compensation?

Whether the defendants should not be enjoined from crossing plaintiffs' road, the damages for such crossing not having been agreed upon or ascertained, in the manner pointed out by law? Whether the construction of defendants' road does not take actual property of plaintiffs without compensation, by reason of two tracks of the two roads running so near to and parallel with each other, as to endanger the safety of the passengers getting in and out, and thereby deterring passengers from riding?

As to the first question, it is not now doubted but that a franchise of this nature may be conferred upon a corporation. That being conceded, it follows that the legislature can constitutionally bestow grants of this kind. The constitution contains no prohibition and no restrictions on this power.

A corporation is but an artificial creation, and may consist of one or more individuals. There is no constitutional provision that prohibits such franchises being conferred upon

or exercised by individuals, nor does there appear to be any objection to making such rights assignable.

The legislature had the power to grant this franchise ; the expediency and necessity of granting, the propriety of granting it to a corporation, or a set of individuals and their assigns; the safeguards and restrictions to be placed upon the use ; are all, unless some constitutional inhibition is violated, entirely in the discretion of the legislature. No question can now arise as to the power of the legislature to authorize the construction of a railroad upon any of the streets of New York, without any compensation to the corporation or to the owners of property fronting on the street, and without the assent of the corporation, but even in direct opposition to the wishes of the corporation. That point is settled by the case of *The People* agt. *Kerr* (25 *How. p.* 258).

If, by the act of 1860, a corporation is created, it is not objectionable under the clause of the constitution which contains the prohibition ; it being provided that a corporation may be created by a special act, when in the judgment of the legislature, the object of the corporation cannot be obtained under the general law. The passage of the special act is conclusive of its merits, in the judgment of the legislature (*Mosier* agt. *Hilton*, 15 *Barb. cited from page* 663).

As to the second question, conceding that defendants have no authority to construct their road without the assent of the corporation, still the plaintiffs do not stand in a position to assert that there is no such assent, or if there be none, to take advantage of the want of it.

The party whose assent is necessary, is the only party who can take advantage of the want, except where the want of it has the effect of making a corporation exceed its corporate powers, in which excepted case the attorney general can alone take proceedings for such usurpation, since the want of such consent works no private injury to the corporation, or to the individual owners of property or taxpayers, under the decision of *The People* agt. *Kerr*. The stockholders and creditors of defendants do not complain.

The want of consent cannot injuriously affect the plaintiff

in its franchise or corporate powers. The requirement of the consent was clearly not for its benefit.

The plaintiff then does not stand in a position either to assert that there is no assent, or to take advantage of its non-existence.

But the requirement of the assent of the corporation of the city of New York is, in effect, so far as the defendants are concerned, abrogated. By the act of 1860, page 16, it was in substance provided that all railroads thereafter to be constructed in the city of New York, should be so constructed under the authority, and subject to the regulations and restrictions which the legislature might thereafter provide, and all acts inconsistent therewith repealed.

It is obvious that the legislature could directly repeal the clause requiring the assent of the corporation of the city of New York, and that thereupon, any railroad company organized under the railroad act, whether formed before or after such repeal, would not be affected by the repealed clause.

This act of 1860, renders it necessary for a corporation formed under the general railroad law, for the purpose of a railroad in the city of New York, to obtain the authority of the legislature to construct its road, and the legislature in giving such authority, makes such regulations and restrictions as, in their judgment, are requisite. This abrogates all former laws relative to the actual construction of railroads in the city of New York.

This road in question has been authorized by the legislature, under such regulations and restrictions as were deemed necessary ; and the defendants having obtained the right to construct from those to whom it was granted, can exercise that right. Again, the clause in question is but a prohibition of the legislature against the actual construction of a railroad track in a street.

The legislature having, by the act of 1860, authorized the construction of a railroad track in the streets in question, and having prohibited the mayor, &c., from giving any assent to any company deriving any authority under the general

ralroad act of 1850, to construct a railroad on the route in question, must be considered as having repealed the requirement of such assent for a road on that route. For it cannot be held, that the legislature means to make it requisite to obtain that which it also says shall not be given.

As the legislature, therefore, have rendered it impossible for defendants to obtain this assent, it is no longer necessary for them to obtain such consent, in order to enable them to use the right which they had obtained by assignment from the individuals named in the act of April 17, 1860.

The defendants now stand in the same position as if the legislature had granted the right to them ; for the legislature granted it to certain persons and their assigns, and the defendants are the assignees.

Another question is, whether defendant's road does not so impair plaintiffs' franchise, as to come within the constitutional provision against taking private property without due compensation. It is only necessary on this point to refer to the case of the *A. and C. P. Railroad Co.* agt. *Douglass* (5 *Seld.* 461).

There is no privilege or right directly granted to plaintiffs of the sole and exclusive use of the Fourth avenue for a railroad track. With reference to the point raised as to the defendants' road crossing plaintiffs' track, this is not such an infraction of private property as to call for a preliminary injunction (*B. C. and J. R. R. Co.* agt. *B. C. R. R. Co.* 33 *Barb.* 420).

This crossing became necessary in an authorized use of the streets, the same as the crossing by ordinary carts. It is true, that at the point of crossing, the rail of the track which is crossed will be subject to some damage by wear and tear ; but that is one of the damages which is necessarily incident in laying rails in a street, the concurrent use of which appertains to others.

There may be considerable question whether the statute requires any compensation for the mere crossing of a track. If it does not, none can be had ; if it does, then the statute does not make the fixing and payment of such compensation

500    NEW YORK PRACTICE REPORTS.

N. Y. and Harlem Railroad Co. agt. The Forty-second Street, &c., Railroad Co.

as a condition precedent to the crossing ; and unless there are allegations of insolvency, or some special cause shown, the court should not interfere to restrain the prosecution of a right.

In this case there are no allegations of insolvency, and no special cause shown ; on the contrary, the complaint does not allege any damages arising from such crossing, which need any compensation.

The last point, as to the effect of the ties and tracks being so near as to endanger the lives of the passengers, and so deter persons from riding, is sufficiently answered by the remark of the judge in his opinion at special term.

Order appealed from affirmed, with $10 costs.

SUTHERLAND, J.    I concur in the conclusions to which Judge BARNARD has arrived, and in most of the views or propositions stated in his opinion, but I am not willing to concur in all he says as to the effect or operation of the act of January 30, 1860 (*Laws of* 1860, *p.* 16).    That act prohibits the construction thereafter of any railroad in the city of New York, without the authority of the legislature, but it does not declare, that such roads may be thereafter constructed by the authority of the legislature *alone*, and without the consent of the city ; and had it so declared, it would not have followed that the legislature had power to authorize the construction of such roads without the consent of the city.    But the court of appeals in affirming the decision in *The People* agt. *Kerr*, must have decided, that at least as to the city corporation, the legislature had the constitutional power to authorize the construction and operation of a railroad in the city, without its assent.

Therefore, the grantees named in the act of April 17th, 1860 (*Laws of* 1860, *p.* 1050), or their assignees, had the right under that act, to construct and operate their road, without the consent of the city, and I am not prepared to hold that this right was surrendered or abandoned, by organizing or undertaking to organize as a corporation, under the general railroad act ; but if otherwise, I concur in the sug-

gestion of Judge BARNARD, that the plaintiff is not in a position to take advantage of the want of consent on the part of the city.