## Street Railway Company *v.* Doyle.

(*Jackson.* May 3, 1890.)

EMINENT DOMAIN. *Dummy line is an additional burden upon ultimate fee in public highway.*

A dummy railroad constructed by authority upon a public road or street, and operated for the transportation of passengers only, by means of a steam-engine and coaches, constitutes an additional burden upon the ultimate fee in the road or street for which the owner of that fee is entitled to compensation as for a taking of his property for public use.

Constitution cited: Art. I., Sec. 21.

Cases cited and distinguished: Bingham *v.* Railroad, 87 Tenn., 522; Smith *v.* Street Railroad, 87 Tenn., 633.

Cited and disapproved: Newell *v.* Minn. L. & M. R'y Co., 35 Minn., 112.

---

FROM SHELBY.

---

Appeal in error from Circuit Court of Shelby County. L. H. ESTES, J.

TURLEY & WRIGHT and MYERS & SNEED for Street Railway Company.

F. P. EDMONDSON and J. P. HOUSTON for Doyle.

CALDWELL, J.  Action by Doyle, an abutting lot-owner, ·to recover damages from the East End Street Railway Company for the alleged wrongful and unlawful construction and operation of its railway line along and upon the highway in front of his property.  Verdict and judgment for plaintiff, and appeal in error by defendant.

On the trial below the defendant requested the trial Judge to instruct the jury as follows: "If the jury find that the defendant constructed its road through a part of the city to a point five miles into the country, in accordance with its contract with the city and county, road [its cars?] being propelled by a steam motor, and used only for carrying passengers, stopping at street crossings to take on passengers, then the Court charges you that its construction is not an additional servitude upon the streets or public roads from that contemplated in the dedication."

The Court refused to give this instruction, and his action in that behalf is assigned as error.

This presents the question reserved in the Smith case (3 Pickle, 633), namely: Whether a railway, whose cars are propelled by "a · dummy steam-engine," and used for passengers only, is a burden or servitude on the public street or highway in addition to that contemplated in the original dedication of the land to public use.  The reservation was made in that case because the plaintiff therein did not own the ultimate · fee in the street, and was not, therefore, in an attitude to be affected

by a decision of the question. For reasons stated in that case and in the Bingham case, to be hereafter cited, an abutting land-owner, whose line is the side and not the center of the public highway, is not entitled to compensation for the imposition of an additional burden on the ultimate fee. Not owning the fee, he can justly claim no compensation for its impairment by a new burden imposed upon it. That is a matter for the owner of the estate out of which the public easement was originally carved, and not for the abutting owner, whose title-papers take him only to the side of the highway, as was true in the Bingham and Smith cases.

In the present case the plaintiff's line is in the center of the highway, and to that line he owns the ultimate fee; that is, he has such ownership of the soil that he may resume absolute possession and dominion of it to the center of the highway whenever the original use for which the highway was set apart shall be finally abandoned.

The appropriation vested the public with only such part of his fee-simple estate as was necessary to the full enjoyment of the use then in contemplation. Consequently any thing which diverts the highway from that use, or applies it to another or different use, is the imposition of an additional burden on the reserved estate of the owner, and constitutes a taking of his property, for which he may demand and recover just compensation.

So, then, the proposition contained in the re-

quest for special instruction is a material one in this case, and should have been given or refused, as it may be sound or unsound in law.

It is well settled that an ordinary steam or commercial railway *is*, and that an ordinary street railway, operated with horses, *is not* an additional servitude on the ultimate fee in the public street or highway, the former being a new and different use, while the latter is but an improved and consistent mode of enjoying the original or ordinary use. *Bingham* v. *Railroad*, 3 Pickle, 522; *Smith* v. *Street Railroad, Ib.*, 633, and authorities cited.

The distinction between the use by the commercial railway and that by the horse railway is so wide and plain that it needs no further comment or illustration.

Confessedly the railway involved in this case is on the line between the two—the equivalent of neither, but partaking largely of the nature of both. Like those upon the commercial railway, its cars are propelled by a steam-engine, with its unavoidable smoke, noise, and vibration, though in a less degree; and, like the horse-car line, it transports passengers only, stopping at short intervals upon the highway to take them on and let them off, while the commercial railway carries both passengers and other freight, receiving and discharging them at regular depots farther apart.

The size, weight, and speed of appellant's trains (consisting usually of a small "boxed" engine and two coaches) are much less than those of the com-

mercial railway trains; but, at the same time, its trains are much larger, heavier, and more rapid in transit than the ordinary horse-car. Alike, the commercial railway and that operated by the appellant are obvious hindrances to other modes of travel and traffic rightfully enjoyed upon the public highway; alike, they endanger the lives and property of individuals, for whom, in the aggregate, the original dedication or condemnation was made. There is a difference, it is true; but the difference is in the degree and not in the kind of interruption and peril.

From the very nature of the case it is perfectly manifest to our minds that the presence of appellant's track and trains is entirely inconsistent with, and a perpetual embarrassment to, the ordinary use of the public highway.

It is utterly impossible to operate such a railway with such trains without greatly obstructing and rendering more dangerous other business and travel usually seen and always allowable on a public highway.

To the extent of this obstruction and this increase of danger by its appropriation of the highway for its own purposes, there is necessarily a diversion from and inconsistency with the original use; and to that extent the construction and operation of appellant's road is the imposition of an additional servitude upon the ultimate fee of the owners of the soil in the public highway.

This does not mean that the trains of appellant

are to be banished as unauthorized by law, but simply that their presence and operation in the public highway is an additional burden on the ultimate fee, for which the owner is entitled to compensation.

The charter from the State and contract with the city and county authorize the proper construction and use of this railway, but they do not purport to warrant the appropriation of the owner's property without paying him therefor. Even if such were their purport and intent, that could not alter the case, and would afford no sufficient answer to the plaintiff's demand, because the Constitution forbids the taking of private property for public use without just compensation. Constitution, Art. I., Sec. 21.

The instruction requested was properly refused.

Counsel for appellant have called our attention to the case of *Newell* v. *Minn. L. & M. R'y Co.*, 35 Minn., 112 (S. C., 27 N. W. R., 839), which we find to be an authority for the proposition requested, and in conflict with the conclusion reached in this opinion. Not agreeing to the reasoning of that case, and the decision of a sister State being at most only persuasive authority, we prefer not to follow it.

We have carefully considered the several other assignments of error. None of them are well taken.

Let the judgment be affirmed.