[Birmingham Traction Co. v. Birmingham Railway & Electric Co.]

# Birmingham Traction Co. v. Birmingham Railway and Electric Co.

### Bill in Equity for Injunction.

1. *Trespass no ground for injunction.*—When, by the charter of an electric railway company, it is without authority to extend its railway over certain lands, the owner thereof cannot enjoin such extension, because it is mere private trespass capable of adequate redress at law.

2. *Exercise of eminent domain; injunction.*—It is only where a party, authorized by law to exercise the right of eminent domain, proceeds without legal ascertainment and payment of compensation, that equity will enjoin without regard to irreparable injury, or the adequacy of legal remedies.

3. *Additional servitude.*—The construction and operation of an electric street railway with municipal consent, along a public street, and conforming to its grade, with no special injury to the fee, is not the imposition of an additional servitude for which the owner of the fee can demand compensation.

APPEAL from Jefferson Chancery Court.

Tried before Hon. THOMAS COBBS.

The Birmingham Railway and Electric Co. filed its bill against Birmingham Traction Co. and the town of Woodlawn, to enjoin the Traction Company from constructing and operating a street railway along a street in the town of Woodlawn, the fee whereof was in complainant. On the answer of defendants, Birmingham Traction Co. made a motion to dissolve the temporary injunction, and to dismiss the bill for want of equity. The chancellor overruled these motions and defendant appeals. The facts are stated in the opinion.

ALEX T. LONDON and JOHN LONDON, for appellant.— The answer is full, the title of complainant is unequivocally denied, and the injunction should be dissolved, there being no insolvency or irreparable injury shown.— *E. & W. R. R. of Ala. v. E. T. V. & G. R. R.*, 75 Ala. 275, 283; *H. A. & B. R. R. v. B. U. Ry. Co.*, 93 Ala. 505. In determining whether the injunction shall be continued

[Birmingham Traction Co. v. Birmingham Railway & Electric Co.]

the court will consiler the relative inconvenience to the parties.—*E. & W. R. R. of Ala. v. E. T. V. & G. R. R.,* 75 Ala. 275; *H. A. & B. R. R. v. B. U. Ry. Co.,* 93 Ala. 505; *C. & W. R. R. v. Witherow,* 82 Ala. 190; *Harrison v. Yearby,* 87 Ala. 185, 189; *Clifton Company v. Dye,* 87 Ala. 468, 471; *Whitley v. Dunham Company,* 89 Ala. 493, 497; *Western Ry. of Ala. v. A. G. T. R. R.,* 96 Ala. 272, 283. Irreparable injury is a conclusion of law and the facts showing it must be alleged.—1 High on Injunctions, §722; *Bolling v. Crook,* 104 Ala. 130, 138; *Kingsbury v. Flowers,* 65 Ala. 486; *Bank v. U. S. Loan Company,* 104 Ala. 297, 302; *Kellar v. Bullington,* 101 Ala. 267; 20 Am. & Eng. Encyc. of Law, 163; 10 *Ibid,* 836.

WALKER, PORTER & WALKER and R. H. PEARSON, *contra.*—The town of Woodlawn had only an easement for the ordinary passage of persons and vehicles, and did not permit the granting of a right of way to appellant. It was such an additional burden as would allow appellee to demand compensation before being used.—2 Dillon's Mu. Corp. 703; 67 Ill. 439; 82 Ala. 297. See also *Jones v. N. O. & S. R. R. Co.,* 70 Ala. 230; *East & West R. R. Co.,* 75 Ala. 280; *Columbus & Western Ry. Co. v. Witherow,* 82 Ala. 190; *H. A. & B. R. R. et al. v. B. Ry. & E. Co.,* 113 Ala. 239.

HEAD, J.—For the purpose of determining how the largely discretionary powers of the chancellor in the matter of retaining and dissolving temporary injunctions should be exercised in the present cause, the facts of the case (though the parties are in dispute as to some of them) may be briefly stated as follows: The appellee, the Electric Company, owned in fee simple, for a number of years, beginning before the incorporation of the town of Woodlawn, a strip of land from a point in Birmingham to a point in East Lake, passing through what is now the incorporated town of Woodlawn. This strip is 100 feet wide and appellee has, for more than seven years, used it as a way for the operation of a street railway belonging to it, which it was authorized by its charter to operate. The railway track was located in the center of the strip. In April, 1896, by a contract, upon valuable consideration, the appellee agreed to

grant and convey to Woodlawn "for the use of the citizens and the public generally an easement over that part of its right of way which is within the corporate limits of the town of Woodlawn, and which is not absolutely essential for the operation of its road, this amount being about 25 feet for double track and such room as is necessary to erect poles and proper waiting stations;" and the strip, saving any interference with the reserved rights of the appellee, has since been a public street of Woodlawn and so recognized and used by the public generally, the appellees continuing to use the track, stations, etc., as before. .

The appellant, the Traction Company, was incorporated as a street railway company in August, 1897, under the general laws of the State authorizing the purchasers, three or more in number, of other street railroads, to organize as a corporation (Code, 1896, §§1199-1200), the corporators having previously purchased at judicial sale a line of railway, constructed and in operation, from a point in Birmingham to Gate City, in the same county, by a certain defined route "to the village of Woodlawn, at a point near the eastern suburb of said village," thence by a certainly defined route to Gate City. The ground over which this company now seeks to build a street railway, and to enjoin which the Electric Company file this bill, is a part of and along the said one hundred feet strip, through a portion of the town of Woodlawn, and outside of the central twenty-five feet strip; and not any portion thereof used by, or actually necessary for the use of, the Electric Company for the operation of its railway, but being a portion of the strip covered by the easement agreed by the Electric Company to be granted to Woodlawn, as aforesaid. The Traction Company, having regularly procured the consent of the municipality of Woodlawn to build this line of street railway through said street, insists upon a legal right to do so, without making compensation to the Electric Company as the owner of the fee, saying that it only proposes to share the easement of the town, by the town's express consent, and not to take or injure the fee; hence, it says, it is not about to take the private property of Electric Company for public use, under right of eminent domain, and not obliged to make compensation to that company. The correctness or not

of this contention is the vital question presented by the record.

The Electric Company contends, in the first place, that under the peculiar terms of its charter, the Traction Company has no authority to build on said strip, even by condemnation and payment of compensation; that it is confined, in its charter powers, to the operation of the line of road it purchased at the judicial sale.

. The Electric Company is not in a position to maintain its bill on this contention, for if the Traction Company has no legislative authority to condemn a right of way outside of its constructed line, purchased as aforesaid, and if the proposed act of building along the said strip is, as the Electric Company contends, a taking or injuring of its fee in the land, then the bill shows merely a threatened private trespass which may be adequately compensated at law. It is only where a party authorized by law to exercise the right of eminent domain proceeds in its exercise without a legal ascertainment and payment of compensation, by condemnation proceedings, that a court of equity will enjoin without regard to the question of irreparable injury or adequacy of legal remedies.—*E. & W. R. R. Co. v. E. T. V. & Ga. R. R. Co.,* 75 Ala. 280; *H. A. & B. R. R. Co. v. Matthews,* 99 Ala. 24; *Birmingham Traction Co. v. B'h'm Ry. & Elec. Co.* in MSS.

We therefore dismiss that branch of the case, and will consider that the Traction Company was authorized to condemn and build the proposed line of street railway.

It will be borne in mind that no part of that portion of the 100 feet strip which was reserved by the Electric Company from its equitable grant to the town (the same, in this case, as an executed grant) of the easement aforesaid, is sought to be entered upon by the Traction Company, as was the case in *Birmingham Traction Co. v. Birmingham Ry. & Elec. Co.* (the same parties as here) recently decided by this court, where the Traction Company undertook to cross the reserved central twenty-five feet of the strip actually occupied by the Electric Company with its tracks, without condemnation or making compensation. That authority (the case recently decided by this court) showed, no doubt, correctly, the general principle that the crossing by one company, invested with the right of eminent domain, of

the right of way of another, even though such other had only the easement of a way, was a taking of the private property of the owner of such easement within the meaning of our constitution, for which condemnation and payment of compensation must first be had. We do not question the correctness of that general proposition, always applicable where no municipal easement and control are involved, as in that case.

So, the inquiry to which we address ourselves is, has the owner of the fee, under the laws in force at the time of the grant, who has granted to a municipal corporation the easement of a public street upon the land, a right to demand compensation for the building and operating upon the street, with municipal consent, of a street railway by duly chartered street railway company,—the erection being assumed to be upon grade and not shown to be specially injurious to the fee.

The proposed railway of the Traction Company now sought to be enjoined was to be operated by electricity according to the methods now of common knowledge.

The settlement of this inquiry evidently depends upon the further question whether or not electric street railways, such as they have now become to be commonly known, are to be regarded as additional servitudes upon the streets of towns or cities, not within the implied contemplation of the dedicators or grantors at the time of the dedication or grant.

It has been adjudicated with practical unanimity throughout the country for many years that street railways operated by horse power, though the cars were confined to fixed tracks built upon the surface of the street for their special use, were, so far as the right of the owner of the fee to complain was concerned, no more than the drawing of any other carriage or vehicle upon the streets and were therefore legitimate uses of the streets, which the municipality was authorized to permit without violating any right of the owner of the fee.

It has been decided by this court that the building of an ordinary steam passenger and traffic railroad upon the public street of a town or city does impose a new servitude, entitling the owner of the fee to compensation.—*Western Ry. of Ala. v. Ala. Grand Trunk R. Co.,* 96 Ala. 272, and the weight of authority elsewhere is to the same effect. The Tennessee court holds that a

[Birmingham Traction Co. v. Birmingham Railway & Electric Co.]

street railway operated by a dummy steam motor imposes a new servitude.—*East End St. Ry. Co. v. Doyle,* 88 Tenn. 747 (9 L. R. A. 100), though some courts hold otherwise.

The electric railways, such as we are now considering, are a comparatively recent development, yet, as is of common knowledge, they have practically superseded all systems of street railway enterprise (saving the cable systems in the larger cities), and their nature and modes of construction and operation, as affecting or not the legitimate use of streets within the implied contemplation of the dedication, have been subjects of frequent consideration and adjudication by courts of last resort in this country; and it may be said that there is almost unanimity in the adjudications that such uses are legitimate uses of streets, by the permission of municipalities, without any right of the owner of the fee to compensation therefor. That most excellent series, the Lawyers' Reports Annotated, has given care to the collection, in its reports of cases and notes, of the authorities upon this subject, and we will cite the following from that series supporting the view above expressed: *Koch v. North Ave. R. R. Co.,* (Md.) 15 L. R. A. 377; *Taggart v. Newport St. R. R. Co.,* 16 R. I. 668; (7 L. R. A. 205); *Penn. R. Co. v. Braddock Electric R. Co.,* 1 Pa. Dist. Rep. 626, 22 Pittsburg L. J. N. S. 413; *Lockhart v. Craig St. R. Co.,* 139 Pa. 419; *Detroit City R. Co. v. Mills,* 85 Mich. 634; *Dean v. Ann Arbor St. R. Co.* (Mich.), October, 1892; *People, Kunze v. Fort Wayne & E. R. Co.,* 92 Mich. 522 (16 L. R. A. 752); *Halsey v. Rapid Trans. Co.,* 47 N. J. Eq. 380; *State, Kennelly v. Jersey City,* 57 N. J. L. 293 (26 L. R. A. 281); *State Roebling v. Trenton Pass. R. Co.* (N. J. L.), 33 L. R. A. 129; *Louisville Bagging Mfg. Co. v. Central Pass. R. Co.,* 95 Ky. 50; *Williams v. City Electric Co.,* 41 Fed. Rep. 556; *Ogden City R. R. Co. v. Ogden City,* 7 Utah 207; *San Antonio Rapid Transit Co. v. Limberger,* 88 Tex. 79, 30 S. W. 533; *Doane v. Lake St. El. R. R.* (Ill.), 36 L. R. A. 97; *Ried v. Norfolk City R. R. Co.* (Va.), 36 L. R. A. 274. See also the following other cases: *Canastota Knife Co. v. Newington Tramway Co.,* 69 Conn. 146, 36 Atl. 1107; *Simmons v. Toledo,* 8 Ohio C. C. 535; *Oviatt v. Akron St. R. Co.,* 3 Ohio Dec. 252; *Sanfleet v. Toledo,* 10 Ohio, C. C. 460; *Howe v.*

*West End St. R. Co.*, 167 Mass. 46, 44 N. E. 386; *Kansas City etc. Ry. Co. v. St. J. Term. Co.*, 97 Mo. 457.

The case of *Chicago, Burlington & Quincy R. Co. v. West Chicago St. Ry. Co.*, 156 Ill. 255, reported with extended notes in 29 L. R. A. 485, is a valuable discussion of the question involved here. The C. B. & Q. R. R. ran on a public street in Chicago, the fee of which was in that company. It was contended that the street railway company, having the city's authority, had no right to build its line of street railway along another public street across the line of the C. B. & Q. Co. without condemning and paying compensation to that company as the owner of the fee. The court discussed the question fully, reviewing the authorities, and held against the claim of compensation. It is true the street railway company was to be operated by horse power, but the discussion of the case and authorities reviewed showed there was no distinction between that power and electricity. We have seen but two authorities to the contrary—a Nebraska case (*Jaynes v. Omaha St. Ry. Co.*, 39 R. L. A. 751), and a New York case (*Lahr v. Metropolitan Elev. R. Co.*, 104 N. Y. 268). We are not aware that the question has ever received the consideration of this court. In the case of *H. A. & B. R. R. Co. v. B. U. Ry. Co.*, 93 Ala. 505, neither of the companies owned the fee, both having mere easements in the public streets of the city, the fee being in some other not complaining. The question was really involved in the case of *H. A. & B. R. R. Co. v. Birmingham Ry. & Elec. Co.*, 113 Ala. 239, but was not considered or decided by the court for the reason that the peculiar physical conditions of the proposed crossing were such as to cause detriment to the public if the crossing should be effected, and the party seeking to cross was shown to have another feasible place of crossing without causing such public detriment. On these accounts, the injunction was allowed without considering the private constitutional right of the H. A. & B. R. R. Co. to compensation as for taking its property for public use.

Unless we can set at naught a most overwhelming volume of well-considered adjudged cases, we are compelled to hold that the now almost exclusively known system of street railway travel—the electric motor system—built upon street grade, doing no special

[Birmingham Traction Co. v. Sou. Bell Telephone & Telegraph Co.]

injury to the fee, is not the imposition of a new or additional servitude upon the highway for which the owner of the fee is entitled to compensation, and consequently that injunction in the present case, upon the facts as they now appear before us, should not be allowed.

There is another consideration specially applicable to this case. At the time the Electric Company granted to Woodlawn the easement of a public street over the *locus in quo*, the statute, now embodied in subdiv. 8 of section 1193 of the Code of 1896, provided that street railway companies have power "To use steam or electric force or mechanical power, or animals as a motive agent, subject to the control of the authorities of the city, town or country through which the road runs." Did not the grant of the easement without reservation carry to the town of Woodlawn, by contract, these specific uses of the street?

Decretal order of the chancellor reversed, injunction dissolved, and cause remanded.

*Bill in Equity for Injunction.*

