MISSISSIPPI CENT. R. Co. *v*. HATTIESBURG TRACTION Co.

[67 South. 897.]

EMINENT DOMAIN.   *Railroad tracks in streets.   Property rights.*
While it is true that a railroad's right of way, when owned by
it, is its private property, and cannot under section 17, Constitu-
tion 1890, "be taken or damaged for public use, except on due
compensation being first made." Yet it is equally true that a
railroad company does not own the streets of a municipality along
or across which its tracks are laid, neither can it acquire, under
section 3322, of the Code, any exclusive right to the use of the
streets of the municipality.  The only right it can acquire in
the streets of a municipality is the right to locate its tracks
along or across them, subject to the right of the public to con-
tinue the free use thereof, for traveling, and to the right of
the municipal authorities to grant similar easements therein,
and a street railway company; receiving a permit from a city
to lay its tracks in the streets may extend its tracks in a street
across a railroad company's tracks without first instituting
eminent domain proceedings or paying damages.

APPEAL from the chancery court of Forest county.
HON. J. M. ARNOLD, Special Chancellor.

Suit by Mississippi Central Railroad Company
against the Hattiesburg Traction Company. From a
decree dissolving a temporary injunction, complainant
appeals.

The facts are fully stated in the opinion of the court.

*Truly, Ratliff & Truly*, for appellant.

*Stevens & Cook*, for appellee.

SMITH, J., delivered the opinion of the court.

The Mississippi Central Railroad Company owns
and operates a railroad which extends through the city

of Hattiesburg, crossing a number of the streets of the city, one of them being Main street. The Hattiesburg Traction Company is a street railway company, and has received from the city of Hattiesburg permission to lay its tracks in the city streets. In extending its track along Main street it became necessary to cross the track of the railroad company, and negotiations were entered into by it with the railroad company for that purpose; the traction company agreeing to install and maintain the crossing at its own expense. The two companies failed to reach an agreement in the matter, not by reason of any objection of the railroad company to the character of crossing proposed to be installed by the traction company, but mainly because that company would not agree to operate its road at the crossing in accordance with certain requirements of the railroad company.

Failing to obtain the consent of the railroad company to cross its track, the traction company proceeded one night to install the crossing without the knowledge of the railroad company. This fact was discovered by the railroad company the next morning before the installation was complete, and it thereupon filed its bill in the court below, praying that the traction company be enjoined—

"from attempting to install or use a crossing over the line and roadbed of complainant at Main street crossing in the city of Hattiesburg, until eminent domain proceedings have been instituted, and the right to condemn a crossing has been judicially and finally determined."

Upon the filing of this bill a temporary injunction was issued and served upon the traction company, and this appeal is from a decree sustaining a motion to dissolve this injunction, and is for the purpose of settling the principles of the case. After the granting of this injunction, an agreement was entered into between the two companies by which the traction company was per-

mitted, without prejudice to the rights of the railroad company in so far as this litigation is concerned, to complete the installation of this crossing and to use the same.

The reason assigned by the traction company for attempting to install this crossing during the night is that to do so would not then interfere with the movement of trains over the railroad track; it not having commenced the installation until the last train due to cross the street that night had passed. With the truth of this explanation, however, we are not here concerned. The sole question presented to us for decision is this: Has a street railway company, operating under municipal authority, the right to construct its track across that of a steam railroad at a point where it crosses a street of the municipality, without first instituting condemnation proceedings and paying the railroad company the damages therein awarded it?

It is true that a railroad company's right of way, when owned by it, is its private property, and cannot, under section 17 of our Constitution, "be taken or damaged for public use, except on due compensation being first made;" but it is equally true that a railroad company does not own the streets of a municipality along or across which its tracks are laid, neither can it acquire, under section 3322 of the Code, any exclusive right to the use of the streets of the municipality. The only right it can acquire in the streets of a municipality is the right to locate its tracks along or across them, subject to the right of the public to continue the free use thereof for traveling, and to the right of the municipal authorities to grant similar easements therein. In *Pennsylvania Co.* v. *Lake Erie, etc., Ry. Co.* (C. C.), 146 Fed. 446, a case wherein, as in the case at bar, the complainant was a railroad company and the defendant a street railway company, it was said that:

"Complainant's bill assumes the possession by complainant of a right in the street which in law it can-

not possess. The bill alleges that the defendant is about to enter upon complainant's 'right of way.' In the sense in which this term is used in the bill, the complainant has no right of way in the street; that is, it has no tangible property therein. True, it has in strictness a right of way across the street; but this right is of an intangible nature. It has no more substance than the right of way over a street possessed by a pedestrian. So that to say that the defendant is about to enter upon complainant's 'right of way,' meaning the right of way it possesses across the street, is to say that the defendant is about to do what any and every body has a right to do at all times, subject only to the movement of complainant's trains. What the defendant proposes to do is to introduce in the public highway, at the point where complainant's tracks cross it, another public use thereof, under authority of the municipal legislation necessary in such cases. The complainant has no property in the street, and none on it except a few ties and rails. The disturbance of these for the purpose of suiting them to the new use to be made of the public highway is necessary, and results in no invasion of complainant's rights.''

The rule here announced is in accord with all of the authorities dealing with this precise question that have come under our observation, most, if not all, of which will be found set forth in the notes to 36 Cyc. 1420, to *Chicago, etc., R. R. Co.* v. *West Chicago Street R. R. Co.*, 29 L. R. A. 485, and to *Southeeast, etc., R. R. Co.* v. *Evansville, etc. Ry. Co.*, 13 L. R. A. (N. S.) 916.

A number of cases have been cited by counsel for appellant to the point that a railroad company's right of way is private property, and cannot be taken or damaged for public use except on due compensation being first made, in none of which, however, was the right of the street railway to cross the track of a railroad in a public street involved, except in the case of *Central*

*Ry. Co.* v. *Philadelphia, etc., R. R. Co.,* 95 Md. 428, 52
Atl. 752. In that case the street railway company un-
dertook to cross the track of the railroad company in a
public street, whereupon the railroad company filed a
bill in the proper court, "praying for an injunction to
restrain the street railway company from crossing its
track until it, the street railway company," would enter
into an agreement to pay, not only the cost of making
the crossing, but the subsequent cost of keeping the
crossing in repair, which repairs, it was insisted, should
be made under the supervision and according to the
direction of the engineer of the railroad company. While
the litigation was pending, "the street railway com-
pany, under an agreement with the steam railroad com-
pany, made the crossing at its own expense, and the
question as to the relative rights of the two companies
was reserved for the future determination of the court."
It was held that the street railway company, before
it crossed the track of the railroad company, must exe-
cute an agreement for the maintenance of the crossing.
This was the only question decided in that case; and,
if it is in point here, it is only authority for the pro-
position that, when a street railway company desires
to cross the track of a railroad company in a public
street, it must pay the expense of installing and main-
taining the crossing. Neither of these questions, how-
ever, are here involved, for the reason that the street
railway company has paid the expense of installing the
crossing and proposed to bear the expense of maintain-
ing it.

In the case of *Birmingham Traction Co.* v. *Birming-
ham Ry. & Elec. Co.,* 119 Ala., 129, 24 So. 368, so much
relied upon by counsel for appellant, no question of the
right of one railroad company to cross the tracks of
another in a public street was involved. That case
was decided by the supreme court of Alabama on Au-
gust 15, 1898, and on October 29, 1898, another phase

of the matter in dispute between the parties thereto came again before that court for consideration in the case , of *Birmingham Traction Co.* v. *Birmingham Ry. & Electric Co.,* 119 Ala. 137, 24 So. 502, 43 L. R. A. 233. An examination of the reports of the two cases discloses that the Birmingham Railway & Electric Company had granted to the town of Woodlawn, ''for the use of the citizens and the public generally, an easement over that part of its right of way which is within the corporate limits of the town of Woodlawn, and which is not absolutely essential for the operation of its road, this amount being about twenty-five feet for double track, and such room as is necessary to erect poles and proper waiting stations.''

In the first case the Birmingham Traction Company attempted, not only to lay its track across that portion of the Birmingham Railway & Electric Company's right of way which had been granted to the town of Woodlawn for a public street, but also across the twenty-five foot strip actually occupied by the electric company, and not included in the street. This, the court held, could not be done without the consent of the electric company, in the absence of condemnation proceedings. In the second case the traction company was seeking to locate its track along that portion of the electric company's right of way which had been granted to the town for a street, and this the court held it could do without paying the electric company any compensation therefor, the court pointing out (119 Ala. 137, 24 So. 503) that the former case involved, not the use by the traction company of that portion of the right of way over which the city had been granted an easement, but of the 25-foot strip reserved and actually occupied by the electric company.

*Affirmed and remanded.*