THE NORTH BALTIMORE PASSENGER RAILWAY COM-
PANY *vs.* THE MAYOR AND CITY COUNCIL OF BALTI-.
MORE, ROBERT C. DAVIDSON, Mayor, ALFRED E.
SMYRK, City Commissioner, and THE NORTH AVE-
NUE RAILWAY COMPANY OF BALTIMORE CITY.

*Street railways—Exclusive right of Track-way—Municipal
control of Streets—License of Municipality to Street rail-
way Company to Use street for its Tracks.*

An ordinance that authorizes a street railway company to use the
tracks of another company on a certain avenue, but which
declares that nothing therein shall be construed to grant any right
or privilege to lay any additional tracks on a bridge erected and
maintained for public use by the city, and forming a part of
said avenue, is not intended to secure to the company whose
tracks are already on the bridge, a monopoly of the right of
way over the bridge, but simply to avoid incumbering the bridge
with unnecessary tracks; and from the fact that the bridge is to
be torn down and reconstructed, and a temporary bridge has
been erected by the city to accommodate the public until the
new bridge is completed, and in the ordinance providing for the
erection of such temporary bridge it is declared to be lawful for
any railway company authorized to lay and maintain tracks on
the old bridge, to lay and maintain its tracks on the temporary
bridge, it does not follow that the company whose tracks were
on the old bridge, and to whom license was given by the ordi-
nance to lay tracks on the temporary bridge, has an exclusive
right of track-way over said bridge, it being within the power of
the Mayor and City Council to allow any other street railway
company to place tracks upon such temporary bridge.

The control of the streets and highways of the city must be retained
in the power of the municipality, and cannot be granted away
or surrendered to other agencies not authorized by the State to
assume control of the streets or highways of the city,

Under a grant or license of the municipality to a street railroad
company to use the street for its tracks, it is only so much of the

248          MARYLAND REPORTS.

North Balto. Pass. Railway Co. *vs.* Mayor, &c. of Balto., *et al.*

street as may be actually occupied that can be claimed to be ex-
clusive of other tracks; and other parts of the street may be
granted to a competing line or lines.

APPEAL from the Circuit Court No. 2, of Baltimore City.

The case is stated in the opinion of the Court.

The cause was argued before ALVEY, C. J., MILLER,
ROBINSON, FOWLER, and McSHERRY, J.

*Bernard Carter,* for the appellant.

*Francis K. Carey,* and *Fielder C. Slingluff,* (with whom
was *Julian 1. Alexander,* on the brief,) for the appellee,
the North Avenue Railway Company.

ALVEY, C. J., delivered the opinion of the Court.

The facts of this case and the allegations of the bill
are the same as those in the case just decided, of the
North Baltimore Passenger Railway Company against
the North Avenue Railway Company, with the addition
in this case of allegations in respect to what is claimed
by the plaintiff as a right to lay down and use tracks on
what is known as North avenue bridge over Jones' Falls,
to the exclusion of the North Avenue Railway Com-
pany. The city is about to tear down the old bridge
and to reconstruct it with new material, and in an
improved manner; and as this work may be in course of
construction for a considerable time, the Mayor and
City Council have provided by ordinance, passed in 1891,
for the erection of a temporary bridge over the Falls to
accommodate the public until the new bridge is com-
pleted. In fact the temporary bridge has already been
constructed. The bridge that is about to be torn down
for reconstruction is that referred to in the ordinance of
the 8th of April, 1891, and over which the plaintiff
company had laid its tracks.

North Balto. Pass. Railway Co. *vs.* Mayor, &c. of Balto., *et al.*

To the bill in this case the Mayor and City Council and the City Commissioner, as well as the North Avenue Railway Company, are made parties; and the prayer of the bill is, that the North Avenue Railway Company be forever restrained from constructing or putting down any railway tracks or structure, either on the existing North avenue bridge over Jones' Falls, or on the temporary bridge now being built over said Falls, or on the new North avenue bridge when built; and that the Mayor and City Council, and the Mayor and City Commissioner, all be restrained and enjoined from allowing the North Avenue Railway Company doing any of the things prayed to be restrained; and that they, and each of them, may be enjoined and commanded to allow the plaintiff, and the plaintiff alone, under the superintendence of the City Commissioner, as soon as the temporary bridge is ready to receive railway tracks, to remove its tracks from the existing North avenue bridge, and reconstruct and replace them on the said temporary bridge, and on the approaches thereto from North avenue, and to maintain and operate the same in all respects as it now maintains and operates its railway tracks on the existing North avenue bridge.

This assertion and claim of the plaintiff of *exclusive* right of track-way over the bridge, both permanent and temporary, on North avenue, both the defendant company and the Mayor and City Council, by their answers, utterly deny, and insist that it is and will be within the power of the Mayor and City Council to allow any other company to place its own separate tracks on either the old bridge, over which the plaintiff company now has its tracks, or the temporary bridge, or the new bridge when completed.

The Court below refused the injunction, and this Court is of opinion that it was entirely correct in so doing.

250        MARYLAND REPORTS.

North Balto. Pass. Railway Co. *vs.* Mayor, &c. of Balto., *et al.*

The bridge, known as North avenue bridge, over Jones' Falls, is exclusively the property of the City of Baltimore, erected and maintained for public use, and forms a part of North avenue, one of the highways of the city. And while the plaintiff has been granted the privilege of laying down street railway tracks on the bridge, it has thereby acquired *no such exclusive right as can or ought to preclude* the Mayor and City Council from granting to other companies the right to lay down separate and independent tracks over the bridge. The Mayor and City Council are given the right and power, by statute, *to regulate the use* of the streets and ways of the city, *by railway or other tracks*, but not to grant away or surrender to private corporations, for its own purposes, though such corporation be a street railway company, the exclusive right of occupancy or use of any of the highways of the city. The control of the streets and highways of the city must be retained in the power of the municipality, and cannot be granted away or surrendered to other agencies not authorized by the State to assume control of the streets or highways of the city. 1 *Dill. Mun. Corp.*, (3d *Ed.*), sec. 97. Under a grant or license of the municipality to a street railroad company to use the street for its tracks, it is only so much of the street as may be *actually occupied* that can be claimed to be exclusive of other tracks; and other parts of the street may be granted to a competing line or lines. *Elliott R. & Sts., page* 566.

That provision in the third section of the ordinance of the 8th of April, 1891, which declares that nothing therein shall be construed to grant any right or privilege to the defendant company to lay any additional tracks on North avenue bridge, was clearly not intended to secure to the plaintiff a monopoly of the right of way over the bridge; but was intended simply to avoid incumbering the bridge with unnecessary railroad tracks.

North Balto. Pass. Railway Co. *vs.* Mayor, &c. of Balto., *et al.*

The restriction was intended for the benefit of the public, rather than for the plaintiff company.

It is quite clear that the city has a perfect right to tear down and reconstruct the bridge to meet public exigencies, and the plaintiff company has no right to interpose an objection; nor is the city under any legal obligation to provide a temporary bridge for the use or accommodation of the plaintiff, while the old bridge is being reconstructed. *Kirby & Loane vs. Railway Co.*, 48 *Md.*, 168. On any temporary bridge that has been or may be constructed by the city, the latter would have not only the right to license the plaintiff company, but any other street railroad company to use such bridge, and neither could claim to have a monopoly of the right of way.

It is said, however, that by the ordinance of the Mayor and City Council providing for the erection of the temporary bridge, it is declared to be lawful for any passensenger railway company authorized to lay or maintain its tracks upon the *present bridge,* to lay and maintain its temporary tracks upon said temporary bridge for the purpose of making connection with the tracks of such railway company east and west of said bridge; and that as the defendant company is inhibited from laying additional tracks on the present bridge, it follows that it cannot lay tracks on the temporary bridge. But that is not the necessary legal consequence that must follow from the provision of the ordinance for the temporary bridge. Because that license was given to the plaintiff company by the ordinance, it does not follow that a similar license should not be given to the defendant company, to place tracks upon the temporary bridge. Indeed, it appears from the averments in the answers of both the defendant company and the Mayor and City Council, that such license has been given the defendant company, and that the license has been in fact executed, by the placing of a good substantial pair of railroad

tracks on the temporary bridge, which are offered free to the use of the plaintiff and other street railroad companies that may desire to use them.

It is clear we think that there is no equity or right for an injunction in this case, and the order appealed from must be affirmed, with costs, and the bill be dismissed.

*Order affirmed, and*
*bill dismissed.*