## THE CENTRAL PASSENGER RAILWAY CO. *vs.* THE PHILADELPHIA, WILMINGTON AND BALTIMORE RAILROAD CO.

*Crossing Tracks of a Steam Railroad Company in a City Street by Tracks of a Street Railroad Company—Liability For Cost of Construction And Maintenance—Rights of the Intersecting Companies.*

When the tracks of a steam railroad have been laid in a city street under a license from the municipality, and a street railway company under a similar license is authorized to cross these tracks, the street railway company must bear the expense of constructing the crossing and of subsequently keeping it in repair; and since the steam road requires more substantial construction than the street railway, it is proper that

the steam road company should determine the time and mode of making repairs to the crossing.

In such case it is the duty of the steam railroad company to maintain the safety gates and other appliances demanded for the protection of the public, and cannot require the street railway company to bear any part of the cost thereof.

When a new road is made to cross a previously established road, the owner of the new road must pay, *first*, the cost of the construction and maintenance of the crossing, including the necessary structural changes in the old road, and, *second*, the value of the easement or property of the old road which may be impaired or appropriated by the new one.

But when a street railway crosses an existing steam railroad in the bed of a city street, the second of these two elements of damages does not exist, because the rights of the steam road company are subject to the right of the public to use the street, and the street railway is a public use and not an additional burden.

Appeal from a decree of the Circuit Court of Baltimore City (STOCKBRIDGE, J.)

The cause was argued before McSHERRY, C. J., FOWLER, PAGE, BOYD, PEARCE, SCHMUCKER and JONES, JJ.

*Geo. Dobbin Penniman* (with whom was *Fielder C. Slingluff* on the brief), for the appellee.

The question before the Court is *not* the crossing of a new road over the right of way owned by an old road. It is not an invasion by the new road of any vested rights of the old road. It is merely the use of the streets by both the parties hereto, acting under the same authority with equal and mutual rights which must be so arranged that the obligations and burdens of the crossing will be mutually borne.

Two things must be noted: First, that the railroad company was *not* given by its charter any *exclusive* rights in the streets of the city of Baltimore. The charter extends its terminus into the city, but made the use of the streets absolutely subject to the control of the Mayor and City Council of Baltimore. Second. In addition to this provision, that permission must be obtained from the Mayor and City Council of Baltimore, the State further provided that the tracks of the

railroad, which could be constructed in the streets of Baltimore after the consent of the city had been obtained, should be "so constructed and made as not to interfere with the free use and traveling on the streets of the city." This language undoubtedly meant that the tracks must so be laid, that they would not be raised above the paving of the street; that they should be so laid that wagons and all other vehicles using the streets could cross freely and without obstruction or interference, and that the steam railroad company should have no rights which would in any way curtail the rights of the public to use any street on which its tracks were constructed.

This being the condition under which the Baltimore and Port Deposit Railroad Company entered the city of Baltimore, it constructed its tracks (we will assume by authority of the city) on Canton avenue, subject to this limitation, and it was bound to maintain the tracks so that the free use and travel of the public on Canton avenue should not be interfered with. At the time this authority was granted to the Baltimore and Port Deposit Railroad Company, the use of the streets by passenger railway companies was unknown, the public conveyance, which at that time served the public were stage coaches, and undoubtedly under the charter of the railroad company its tracks had to be so constructed that these stage coaches, if using or crossing Canton avenue, would not be interfered with by the presence of the railroad track. We claim that the necessary expense of maintaining the crossings in order that the heavy vehicles operated by both companies might use their respective tracks without injury, should be divided. As the case now stands the steam railroad company has presented to the Electric Railway Company an arbitrary agreement which does not impose any mutual obligations on the part of the steam railroad company, and permits it arbitrarily to impose on the Electric Railway Company any and all charges for maintenance it may see fit to require.

We submit that the great weight of authority in this country supports our position *where the tracks of one railroad laid in the street are crossed by the tracks of another railroad which*

*acquires exactly similar rights.* 3 *Elliott on Railroads,* sec. 1135; *Chicago, etc., Ry. Co.* v. *Whiting St. Ry. Co.,* 139 Ind. 297; *Morris & Essex R. Co.* v. *Newark Ry. Co.,* 51 N. J. Eq. 379; *Lynn* v. *Boston, etc., R. Co.,* 114 Mass. 88; *Brooklyn Central Co.* v. *Brooklyn City R. Co.,* 33 Barbour, 420; *N. Y. & H. R. Co.* v. *42d St. R. Co.,* 50 Barbour, 309.

The case of *Kirby* v. *Citizens Railway Company,* 48 Md. 168, lays down the rule which should be applied here. The Court in speaking of the right of the city to compel the removal of the railway tracks from the centre of Carey street for the purpose of constructing a sewer under the bed of the street said "The easement acquired by the appellee (the railway company) under its charter and the ordinances of the Mayor and City Council is subject to this paramount right, and in constructing its railway, the appellee knew or was bound to know, that its use of the bed of the street for railway purposes, was liable at any time to be interfered with, whenever the city authorities might deem it necessary for the public welfare."

There is nothing in any of the series of cases known as the *North Avenue Passenger Railway Cases,* reported in 75 Md., which sustains the position of the appellee in the case. The Court undoubtedly held in that case that tracks of a railroad company could not be used *longitudinally* by another railway company without compensation being made ; and that as to the portion of the street actually occupied the railway company can claim the right to maintain its tracks to the exclusion of other tracks. This, however, does not apply in a case where the tracks are crossed at right angles, because the track when originally laid across intersecting streets, was laid with the implied reservation in the city to permit other companies to cross the tracks on equal terms. The second comer cannot perhaps cut the first track and leave it in a dangerous condition, but after the second comer has agreed (as in this case) to supply the crossing apparatus necessary for the intersecting tracks of a kind which is approved by the first comer, then for the future the first comer must bear its por-

tion of the wear and tear of the crossing as fully as the second comer, as both parties are equally contributing to the wear and tear of the crossing, and the Court will not consider any additional wear and tear which may take place in the first comer's track after the crossing is put in, over and above the wear and tear which would take place in its track during the same period if the crossing had not been put in. This difference of wear and tear is one of the incidents of the public streets.

The form of agreement which the appellee insists should be signed is objectionable and inequitable for another reason. The agreement provides: "The railway company (appellant) shall keep said crossing in good condition and make all necessary repairs and renewals for all time at its own expense. The said engineer of the railroad company shall have the right to say when, in what manner and to what extent repairs or renewals shall be made, and when such repairs or renewals shall be required to be made, the railway company hereby agrees that it will make the same, and that if they are not made when required to be made by the said engineer, the railroad company (appellee) shall have the right to proceed at once and have such repairs and renewals made at the expense of the railway company, which expense the railway company hereby agrees to pay promptly on demand."

It will be noted that this is not a covenant on the part of the appellant to make repairs when necessary, as a matter of fact, but to make repairs when the engineer of the appellee shall determine they should be made. Admitting for the purpose of argument, that as the second comer the appellant should be compelled to maintain the crossing, it surely can only be required to make such repairs from time to time which are as a matter of fact necessary. This agreement substitutes for the city engineer or for the Courts, as a final arbitrator between the rights of the parties, an employee of one party whose decision the appellant must agree to accept. We submt that when the appellee was given the right to run its tracks through Baltimore it was not given the right to compel all other railway companies which might build on inter-

secting streets across its track to bow absolutely to the will of its engineer.

*Shirley Carter* (with whom was *Bernard Carter* on the brief), for the appellee.

The contention of the appellee is grounded upon the well settled principle, that where a new way or road is made across another which is already in existence and in use, the crossing must not only be made with as little injury as possible to the old road or way, but *whatever structures are necessary for such crossing must be erected and maintained at the expense of the party under whose authority and direction they are made ;* and if the old road or way cannot be crossed without damage to it, and the right to cross is given, such damage must be assessed and paid. *N. C. Rwy. Co.* v. *Mayor and C. C.,* 46 Md. 445–6; *Eyler* v. *Allegany Co.,* 49 Md. 269; *Baltimore City* v. *Cowen,* 88 Md. 454; *Chic., Mil. and St. P. Rwy.* v. *Milwaukee,* 97 Wis. 418; *Kan. City R. Co.* v. *Comrs. of Jackson Co.,* 45 Kan. 116; *Cen. R. Co.* v. *Bayonne,* 51 N. J. L. 428; 15 Ill. App. 587; 100 Ill. 21; 115 Ill. 375.

The owner of the new way is legally bound to compensate the owner of the old way for two distinct things.    1st. For diminishing the value of his easement or right of way consequent upon the crossing of it by the new road or way.    2nd. For the cost of erecting and maintaining such structures as become necessary in order to preserve the old way for the old use, notwithstanding the new use.

The appellee only claims from the appellant in this case, under the second head, viz., *full compensation* for the *maintenance* of the *structures* which are made *necessary* by *its tracks crossing that* of the appellee, *in order to protect and preserve its track for the old use* ; and the appellee asks this compensation to be paid in a manner most beneficial to the appellant—viz., its *agreement* to pay the whole cost and expense of said maintenance as renewals of the structures and appliances as are required from time to time, instead of demanding a lump sum.

That the principle hereinbefore cited has been held appli-

cable to cases where one railroad crosses the tracks and right of way of another already in existence and in use, and where the old road owns the bed of its road, by condem-. nation or by purchase, or merely an easement, can be seen from the following cases : *Lake Shore and Mich. S. Rwy. Co.* v. *Chic. W. I. R. Co.*, 100 Ill. 21; *C. and W. I. R. R. Co.* v. *E. E. Ry. Co.*, 115 Ill. 375; *Boston H. S. and W. R. Co.* v. *Troy and Boston R. R. Co.*, 58 How. Pr. 167; *Buffalo and Lockport R. R. Co.* v. *N. Y. C. and Hudson R. R. R. Co.*, 15 Hun. 365; *Chic. and A. R. R. Co.* v. *S. and N. W. R. Co.*, 67 Ill. 147, 96 Ill. 274; *Old Colony and F. R. R. Co.* v. *Plymouth Co.*, 14 Allen, 155; 2 *Am. and Eng. R. R. cases.* In *Toledo, etc., Co.* v. *D. L. R. R. Co.*, 62 Mich. 573, it was held that a statute compelling the company whose road is crossed to pay any part of the expense of making the crossing is unconstitutional.

That the fact that the appellee's and appellant's tracks are on a *public street* or highway, with the sanction of the Mayor and City Council of Baltimore, who has granted equal privileges to each, can in no way modify the principle upon which the appellee's contention is grounded, is shown by the following cases: *The Georgia Midland and Gulf Railroad* v. *The Columbia and Southern Railway Co.*, 89 Ga. 205; *Grand Junction Railroad and Depot Co.* v. *County Commissioners of Middlesex*, 14 Gray (Mass.) 565.

It is clear, that the main principle, running through all the cases cited in this brief, and in the numerous cases cited in those cases, is that fundamental one, that one's property can not be taken for public use, even though the right to take is given by competent authority, without just compensation, and only so much can be taken as is necessary for the purpose for which it is taken. From that principle, when applied to the crossing by a new road or way of an old road or way, the principle upon which the appellee's contention in this case is founded is easily deducible ; for, the *second comer* must not only compensate the owner of the original way, for the diminished value of his property in the way, caused by the new

way crossing it, but must also either maintain the structures made necessary by said crossing himself, so as to preserve and protect the old way for its original use, or must pay to the original owner a sufficient sum, from the use of which he can forever maintain those structures ; by compensating the original owner for these two things, he is giving him full compensation for what he takes, and should he compensate him for one only, and still keep the old way across the new, the second comer would be taking the property of the owner of the original way without just compensation ; for if the owner of the original way owned the exclusive use of it, and the crossing of it, in any way diminished the value of it to the owner, and the second comer did not compensate him for it, he would be taking just so much property from the owner without compensation, as would equal the difference between the value of his way before it was crossed and the value of it after it was crossed, even though the second comer paid for the construction and maintenance of the structures necessary for the crossing.

Since that is true, it must follow, that if a railroad company, by municipal authority duly given, lays its tracks in a city street, and it has the right to the exclusive use of those tracks, and while those tracks are in the street, the exclusive use of that portion of the street occupied by those tracks, then we say, it must follow, that if those tracks are crossed by the tracks of a street railway company, which crossing will take so much of the street which is now occupied by the railroad tracks as shall be necessary to be occupied by the crossing appliance of the street railway, and also so much of the rails of the railroad company as shall be necessary to be taken out to give room for the structures and appliances of the railway company's crossing, then the railway company, in so far as it takes those portions of the street already occupied by the rails of the railroad, and in so far as it takes those portions of those rails, it is taking the property of the railroad company, for which it is bound to make just compensation, and that compensation is either the erection and maintenance at its own

cost and expense of the appliances and structures necessary for its crossing, and for the preservation of the railroad's tracks for their former use, with as little damage to that use as possible, or a sum of money paid to the appellee, from the use of which it will be enabled to erect and maintain those structures.   This is all the railroad company claims by way of damages, for the very good reason, that that is all the damage done to it.   It does not own, and has not the exclusive use of the city streets between its rails, or on either side of them, and the city can grant the right to use those portions to whomsoever it pleases, and to be used at any time, except when the appellee's cars are passing over its tracks ; and therefore the appellee can not claim damages for the diminished value of its right of way across Wolf street due to the frequent passing of the cars of the appellant.

Although it is well settled in this State, as well as elsewhere, that except to the extent which the city reserves, in any ordinance authorizing the construction of railroad tracks, the power to grant to other companies the right to use those tracks, that right is an exclusive right, and the city cannot grant to any other company the right to use the tracks of the first company (2 *Dillon on Mun. Corp.*, 727; *Elliott on Roads and Streets*, pages 566, 570, 573; *Jersey City & B. R. Co.* v. *J. C. & H. H. R. Co.*, 20 N. J. Equity, 71, 72; *N. B. P. Rwy. Co.* v. *M. & C. C.*, 75 Md. 250); and although it has been held in those same cases cited above, that when a railroad's tracks are laid in a street, the company has the exclusive use of so much of the street as is actually occupied by those tracks (75 Md. 250); we will grant for the sake of the argument, that the power was reserved to the city, by the clause in the appellee's charter above mentioned, to grant to the appellant the right to make use of the appellee's tracks for crossing Canton avenue, and that the city has granted the appellant that right, it by no means follows, that it can so use them without just compensation to the appellee for that use ; but, on the contrary, it has been flatly decided by this Court, that it can not use those tracks in any way nor the track bed

on which they are laid, without first compensating the owner of them for that use.  *North Baltimore Passenger Railway Co.* v. *North Avenue Railway Co.*, 75 Md. 233.

McSHERRY, C. J., delivered the opinion of the Court.

In eighteen hundred and thirty-five the Baltimore and Port Deposit Railroad Company, now forming part of the Philadelphia, Wilmington and Baltimore railroad system—a railroad operated by steam—laid its tracks along Canton avenue in the city of Baltimore, in pursuance of authority obtained from the Mayor and City Council.  In eighteen hundred and ninety-six the Mayor and City Council gave to the Central Passenger Railway Company—a street railway company—permission to construct its tracks along Wolfe street in the city.  Wolfe street intersects Canton avenue at right angles. When the railway company undertook to cross the track of the railroad company at the intersection of Canton avenue and Wolfe street, the railroad company interposed an objection and in June, eighteen hundred and ninety-seven, filed in the Circuit Court of Baltimore City a bill of complaint for an injunction to restrain the street railway company from interfering with the steam railroad company's track, until the former company would enter into an agreement to pay, not only the cost of making the crossing, but the subsequent cost of keeping the crossing in repair; which repairs, it was insisted, should be done under the supervision and according to the direction of the engineer of the railroad company.  The bill was answered.  Later on the street railway company under an agreement with the steam railroad company, made the crossing at its own expense, and the question as to the relative rights and obligations of the two companies with respect to the maintenance of the crossing was reserved for the future determination of the Court.  Finally, the case came on to be heard and the Circuit Court decreed on April the third, nineteen hundred and two, that an injunction should issue to restrain the street railway company from further using the crossing over the track of the steam railroad company at the inter-

section of Wolfe street and Canton avenue, until the railway company would execute "an agreement for the maintenance of said crossing in the terms set forth for that purpose in the agreement filed with the bill of complaint." From that decree the street railway company has appealed. The precise question, therefore, is, was the Circuit Court right in restraining the railway company from using the crossing until the company would execute an agreement binding itself to maintain at its own cost in the future and for all time the abovementioned crossing?

The bill as originally filed was designed to restrain the construction of the crossing unless the street railway company would agreed to do *two* things ; *first*, to construct the crossing at its own cost, and, *secondly*, to main that crossing when constructed, for all time, and to maintain it in accordance with the requirements which the steam railroad company's engineer might prescribe. With the first of these demands we are not now concerned further than as the legal principles which are applicable to that situation may throw light upon the second ; and we are not concerned with the first demand because by the agreement alluded to the crossing was actually constructed at the expense of the street railway company.

The adjudged cases are quite in accord in holding that when a new road or way is constructed across an old road or way the owner of the new way must not only bear the expense of making and keeping in repair the new way, including the cost of such structural changes in the old way as are rendered necessary by the construction of the crossing ; but he must, in addition, make compensation to the owner of the old way for the property or easement appropriated for the occupancy of the new way. *Mayor, &c., Balto.* v. *Cowen & Muraay*, 88 Md. 447; *N. C. Ry. Co.* v. *Mayor, &c., Balto.* 46 Md. 445; *Chi., Mil. & St. P. R. Co.* v. *Milwaukee*, 97 Wis. 418; *Kansas C. R. Co.* v. *Comrs. Jackson Co.*, 45 Kan. 716; *In re First St.* 66 Mich. 55; *Cen. R. Co.* v. *Bayonne*, 51 N. J. L. 428. Whilst this is conceded by the street railway company to be he law when the new way crosses the private property of the

owner of the old way, it is denied that the doctrine is applicable where one railway track crosses another railway track on the bed of a city street, to which street neither railway company has any other right than the permission given by the municipality to lay tracks thereon.   And this distinction is alleged to exist because neither the first nor the second occupant of a pre-existing city highway has, it is claimed, any exclusive right to the use of the public thoroughfare ; and because the first occupant's right, whatever it may be, is, in its inception and throughout its existence, subordinate to the same use of the highway by the second occupant, if the latter be granted a licence to use that highway.   The lines of the pending controversy are thus sharply drawn and the case is narrowed down to the single inquiry as to whether the asserted distinction in reality exists.   If it does exist to the full extent claimed then the decree is wrong ; if it does not exist then the decree is right.

It is indisputably true that a railway or a railroad company which, under authority obtained from the city, lays its track along or across an opened and subsisting city street, acquires thereby no exclusive right to the use of the street ; but it does not thence follow that it secures no rights of any kind which another company subsequently seeking to use the same *track* or a part of the same *track* is bound to recognize.   In the assertion of the opposite conclusion lies the fallacy of the appellant's contention.   There may well be no exclusive right in the company to the use of the *street* as against the public generally or as against a parallel or competing road, and yet there may be, and certainly there is, a right in the company to use its own *tracks* upon the street, and to use them to the exclusion of any other company, unless the other company procures the right to use those tracks upon making due compensation. This has been distinctly decided in *North Balto. Pass. Ry. Co.* v. *North Av. Ry. Co.*, 75 Md. 233; and in *North Balto. Pass. Ry. Co.* v. *Mayor, &c., Balto.*, 75 Md. 247.   In the first of these cases it appeared that the North Baltimore Passenger Railway Company was, by an ordinance of the City Council

given the right to lay its tracks on certain named streets, and
in the ordinance the city reserved the power to grant to any
other road the privilege to use the *same* tracks, but under such
regulations and upon the payment of such sum or sums of
money to the first mentioned company as should be agreed
upon by the Mayor, the City Commissioner and the president
of the company.  The North Avenue Railway Company
was afterwards incorporated and was granted by an ordinance
of the city the right to use the tracks of the North Baltimore
Passenger Railway Company on North avenue; and it was
further given authority to use electricity as a motive power.
The use of electricity necessitated changes in the road bed and
tracks of the North Baltimore Passenger Railway on North
avenue.   These changes it was alleged would occasion loss
and injury to the North Baltimore Passenger Railway Com-
pany which owned the tracks, and it accordingly filed its bill
of complaint for an injunction to restrain the North Avenue
Company from interfering with the tracks.  Whilst this Court
held that the North Avenue Railway Company had authority
under the ordinance to change the North Baltimore Passenger
Railway's tracks, it also determined that compensation must
be made to the latter company, and accordingly the injunction
asked for was directed to be issued.  And the ground upon
which the relief was granted was distinctly this, that the North
Baltimore Passenger Railway Company had a property right
in its tracks though they had been laid on a city street, and
that the property right thus owned could not be invaded with-
out just compensation being paid even had there been no pro-
vision in the ordinance directing such compensation to be paid.
This is made apparent by the following extract from the judg-
ment of the Court as delivered by CHIEF JUDGE ALVEY : "But
such change and disturbance are not to be allowed without
just compensation to the plaintiff company."   The provisions
of the ordinances are then cited and the judgment proceeds :
"This, therefore, is the contract of the parties ; and it must be
conformed to as a conditon precedent to the exercise of the
right of the defendant to *enter upon or use in any manner* the

tracks and property of the plaintiff. This provision of the ordinance is simply in accordance with the settled general rule of law upon the subject; 2 *Dillon Mun. Corp.*, sec. 727; *Jersey City & B. R. Co.* v. *Jersey City & Hob. H. Ry. Co.*, 20 N. J. Eq. 61; and justice as well as the principle of analogy to cases resting upon the power of eminent domain, require that the compensation should be paid, if required, before the property of the plaintiff is appropriated to the use of the defendant company." In the second case the controversy arose out of a claim made by the North Baltimore Passenger Railway Company to an *exclusive* right of trackway over a city bridge across Jones' Falls. The claim was resisted and this Court, again speaking through CHIEF JUDGE ALVEY, said: "Under a grant or license of the municipality to a street railroad company, to use the street for its tracks, it is only *so much* of the street as may be *actually occupied* that can be claimed to be *exclusive of other tracks* ; and other parts of the street may be granted to a competing line or lines. *Elliott, R. & Sts.*, page 566."

There is, then, *some* right which the first occupant has *in its tracks* that can not be appropriated by the second occupant under a claim of a right to use the *street*.

It is objected, however, that these cases have reference to a *longitudinal* use of the tracks and not to the bisecting of a track at right angles and its use in that way ; and, therefore, that whilst compensation must be made for the one use it need not be made for the other. But how can this difference in the method of using the tracks of the first occupant make a difference in the application of the unvarying legal principle which requires the owner of the new way to make and maintain the crossing over the old way ; especially if a crossing of the track will to some extent appropriate a part of the track of the old way as it is *actually* occupied ? The *exclusive* use spoken of in the case last cited ; or the right to occupy the space covered by the tracks in the street, and to occupy that space to the exclusion of *other tracks*, has relation to the whole length of the track, and therefore, to every

part of its length, and hence to those portions of it which must be cut and removed so that crossing frogs may be inserted. It is obvious, then, that the cutting and removal of so much of the track as must be taken up to permit the crossing structures to be laid, is an interference with and an invasion of the exclusive right of the steam railroad company to use its own tracks on the street ; and it can make no possible difference that the interference or invasion has been occasioned by a right-angle intersection rather than by a longitudinal use except as to the *quantum* of damage inflicted. Precisely the same right is invaded in each instance, and it is the right to actually occupy the space covered by the track, and to occupy that space *to the exclusion of other tracks.* If the longitudinal use of the tracks is an invasion of that right (and it is definitely settled in this State that it is) then the transverse or rectangular use of the same tracks is also an invasion of the same right, differing not in kind, but merely in degree.

There are, as already stated, two elements of damage in the ordinary crossing of an established way by a new way, and these are, *first*, the cost of the construction and of the maintenance of the new way including structural changes in the old way made necessary by the building of the new way ; and *secondly*, the value of the easement or property belonging to the owner of the old way and which may be impaired or appropriated by the new way.

Both of these must be paid by the person who constructs the new way. In cases such as the one at bar, where a railway crosses a railroad in the bed of a city street, the second of these two elements of damage does not exist, because when a steam railroad is located on a street the company takes its rights subject to the rights of the public to use the street in a reasonable and lawful manner, and since the street railway is not an additional burden to the street, but simply such a use as the public are entitled to have made of the street, the steam railroad takes its right in the street subject to the right of the street railway company to lay its tracks across the former's tracks, "and the steam railway is not entitled to re-

cover any compensation for such crossing *as for an additional burden.*" 3 *Elliott on Railroads,* sec. 1135. The cases cited by the appellant's counsel relate to this second element of damage and to nothing more. In *Chicago, &c., R. Co.* v. *Whiting St. Ry. Co.,* 139 Ind. 297 (26 L. R. A. 337), the railway company—the second comer—proposed to furnish the cross-rails and tracks for the crossing, but the railroad company—the first comer—insisted that the crossing would be a burden and a hinderance to the free use of its railroad and that this would be a taking of private property without just compensation. This element of damage was disallowed and whilst the Court stated that the duty was on the steam road to keep the street crossing as nearly as possible as it had been before the first rails were laid, it distinctly held that that duty "does not impose the burden of providing cross-rails an d tracks for the street railway to make the crossing." To the same effect is *Chicago, B. & Q. R. R. Co.* v. *West Chicago Street R. Co.,* 156 Ill. 255, (29 L. R. A. 485.) The street railway company—the second comer—offered to construct the crossing at its own expense without disturbing the steam railroad's tracks, and to keep the same in repair, but the railroad company refused to accept the offer and demanded compensation for the occupancy of what it termed its private property rights in the street, and it also exacted payment for damage to its business, and finally, because the crossing would occasion a greater expense in the operation of its road it asked to be compensated for that additional outlay. These claims for compensation forming what has been above designated the second element of damage in crossing cases, were the ones with which the Court dealt ; but the obligation of the second comer to make and keep up the crossing at its own expense was neither denied nor questioned. In *Morris & Essex R. Co.* v. *Newcrk Pass. R. Co.,* 51 N. J. Eq. 379, the question of compensation does not seem to have been considered. The case relates to the *right* of the street railway to cross the tracks of the steam railroad—a thing not in dispute here—but it does not touch upon the obligation of the intersecting road to

make and maintain the necessary crossing—the precise thing that *is* in dispute here. The same observation is applicable to the case of *Lynn & Bos. R. Co.* v. *Boston & Lowell R. Co.*, 114 Mass. 88. In *Brooklyn Cent. & Jamaica R. R.* v. *Brooklyn City R. Co.*, 33 Barb. 420, and *N. Y. & Har. R.* v. *42 St. R. R.*, 50 Barb. 309, nothing more was decided than that the mere crossing of the tracks of one railroad by the tracks of another on a city street furnished no ground for the first comer to claim damages from the second, and consequently they do not concern this controversy which is limited to the other element of damage—the cost of constructing and maintaining appropriate crossing appliances.

The common law doctrine that whatever structures are necessary for the crossing of an old way by a new way must be erected and maintained at the expense of the party under whose authority and direction the crossing is made is applicable to railways and railroads which intersect each other upon the public streets of a city, unless that doctrine be modified by statute. Outside of statutory provisions—and there are none such in this State—there is neither precedent nor authority for requiring the owner of the subsisting way to contribute any part of the expense rendered necessary to enable the owner of the new way to cross the old way. The crossing of the old way is made for the benefit of the second comer, and not for the benefit of the owner of the old way; and even though both occupants claim under licenses from the same municipality, common justice dictates that the one for whose exclusive benefit the crossing is made should defray the expense of constructing it. And as the continuance of the crossing is as much for his benefit as was the construction of it in the first instance, it is equally obvious that he should maintain it wholly at his own cost. That is all the decree appealed against determined, and that is all the steam railroad insists on.

There is included in the proposition just stated the following corollary, viz., that the engineer of the railroad company shall have the right to say when, and in what manner and to

what extent repairs or renewals shall be made; and that if they are not made by the street railway company that they may be constructed at its expense by the steam railroad company. As it is the duty of the street railway company to keep the crossing in repair so that it may be used not only by itself but by the steam road whose tracks the crossing in some measure interrupts, and as the steam road requires more durable and substantial construction than a street railway needs, it is altogether reasonable and proper that the decision of the questions as to when, in what manner and to what extent the repairs ought to be made should be left to the engineer of the steam railroad company.

Nothing said in this judgment is to be understood as justifying the demand made by the steam railroad company that the street railway company must pay one-half of the cost of safety gates or other similar appliances required under an exercise of the police power for the protection of the public at the crossing. Such appliances it is the duty of the steam railroad company to supply. *Mayor, &c., Balto.* v. *Cowen & Murray*, 88 Md. 454.

This case does not present the question decided in *Kirby* v. *Citizens R. Co.*, 48 Md. 168. That was a contest between the city of Baltimore in fact, though in the name of its contractors, and the street railway company, with reference to the right of the city to interfere temporarily with the tracks of the company so that a sewer might be laid in the bed of the street; and none of the principles applicable to the *crossing* of one way by a new way were involved.

Interpreting the decree in the way we have, there is no error to be found in it, and it will accordingly be affirmed.

> *Decree affirmed with costs above and below.*

(Decided June 19th, 1902.)

SCHMUCKER, J., dissents as to the proposition that the Street Railway Company must keep the crossing in repair at its own expense.