THE PEOPLE OF THE STATE OF NEW YORK ex rel. INTER-
NATIONAL RAILWAY COMPANY, Relator, *v.* PUBLIC SERVICE
COMMISSION, SECOND DISTRICT, STATE OF NEW YORK,
and FRANK W. STEVENS and Others, as Public Service
Commissioners of the Second District of the State of New
York, Defendants.

Third Department, December 28, 1917.

Railroads — power of Public Service Commission under Public Serv-
ice Commissions Law, section 50, to apportion cost of mainte-
nance and operation of interlocker — agreement of railroads as
to such cost and maintenance.

The Public Service Commission is authorized either by the statute or by a
stipulation between it and several railroad companies to apportion between
them the cost of maintenance and operation of an interlocker.

Seniority of occupation alone cannot determine how the cost of erection
and maintenance of an interlocker is to be borne by railroad companies.

Where a railroad company acquired its right to cross the tracks of another
company by a contract in which it agreed that the crossing should be
constructed and maintained in good order by and wholly at its expense,
and that it would pay the cost of structures and appliances which should
become necessary in the judgment of the other party to the contract, or
by order of public authorities, it is bound to build and maintain an inter-
locker, the operation of which over any part of the tracks of a third com-
pany is only necessary in order to make its operation at the crossing
of the parties to the contract safe.

Section 50 of the Public Service Commissions Law places the burden in
the first instance jointly upon said three companies, and then requires
the Commission, if the companies do not agree as to apportionment,
to fix the proportion which each is to pay, but the fixing of the proportion
does not mean that each party must pay a part.

The Commission is given power to consider the improvement, the relation
of the parties to it, and then determine how the cost shall be borne.

CERTIORARI issued out of the Supreme Court and attested
on the 24th day of April, 1913, directed to the Public Service
Commission, Second District, State of New York, and Frank W.
Stevens and others, as Public Service Commissioners of the
Second District of the State of New York, commanding them
to certify and return to the office of the clerk of the county of
Albany all and singular their proceedings had in requiring the

construction of an interlocker and also in denying a rehearing herein.

*Norton, Penney, Spring & Moore* [*Porter Norton* of counsel], for the relator.

*Kenefick, Cooke, Mitchell & Bass* [*Lyman M. Bass* of counsel], for the respondent Lehigh Valley Railroad Company.

*M. B. Pierce,* for the intervenor, respondent, Erie Railroad Company.

*Ledyard P. Hale,* for the Public Service Commission.

KELLOGG, P. J.:

The determination under review requires the construction of an interlocker at Union Road, in the town of Cheektowaga, Erie county, and charges the expense of the construction upon the relator. Relator contends that it is aggrieved by the provision requiring it to maintain and operate the interlocker. It does not seriously question the power of the Commission under section 50 of the Public Service Commissions Law to apportion the cost of the maintenance between the three roads; but its contention is that the provision of the section that the Commission is " to fix in its order the proportion of such cost or expense to be borne by each corporation and the manner in which the same shall be paid and secured," contemplates a division of the expenses between the three roads, and excludes the idea that the whole expense may be charged upon one. It is evident that at a hearing some of the counsel at least apprehended that section 50 authorized the Commission to apportion the cost of construction, but did not give it power to apportion the cost of maintenance and operation, and the Commission evidently was not clear upon that point. The record is satisfactory that it was agreed between the Commission and the opposing counsel that the matter should be disposed of by the Commission as arbitrators, if the power was not committed to it by the statute. Therefore, considering the course of the proceeding, the Commission was authorized, either by the statute or by the stipulation, to apportion the cost of maintenance and operation.

Seniority of occupation alone cannot determine how the cost of erection and maintenance of such an interlocker is to be borne.   At the outset the first occupant has an advantage, and a new party arriving on the scene must by contract, or by process of law, gain the right to cross the tracks of the company already in operation.   The contract by which the crossing is made, or the determination of the proper legal authorities, fixes the rights of the respective parties at the crossing.   The new arrival has condemned, or acquired by purchase, the right to the crossing, and after it has acquired the right, the question of seniority of occupation is not usually of controlling importance as to the future burdens which they shall bear.   When the crossing is made, the rights of the parties are fixed, and future burdens cast upon the crossing by the law or public authorities must be met by the parties, on the theory that the contract or determination fixing the crossing has given the parties equal rights in it, except so far as the contract or determination itself gives one of the parties at the crossing an advantage over the others.   We may, therefore, lay aside to quite an extent the question that the Erie railroad was the first upon the ground, the Lehigh Valley the second, and the International the third, and consider the nature of the improvement forced upon the company by the public authorities and determine from all the facts where the burden should be placed.

The relator acquired its right to cross the tracks of the Lehigh Valley Railway Company by contract, in which it agreed that the crossing " shall be constructed and maintained in good order   *   *   *   by and wholly at [its] expense." It also agreed that if by reason of the crossing it should thereafter become necessary in the judgment of the other party to the contract, or by order of public authorities, " to have additional or improved structures or appliances," it would pay the cost of such structures and appliances.   The proceeding was brought before the Commission upon the petition of the Lehigh Valley Railway Company, asking that the relator be compelled to acquiesce in the completion of the interlocker partly constructed under the contract, and pay the costs of the maintenance and operation.   The Erie Railroad Company was the senior in occupation, and the relator

obtained the right to cross its track by condemnation proceedings, in which it was determined that considering the manner of the crossing it was unnecessary to have an interlocker. And while the relator is charged with the expense of making and maintaining the crossing, the burden of an interlocker was not placed upon it. It is not suggested now that an interlocker is necessary for the protection of the public or either of the railroad companies, so far as the Erie railroad itself is concerned. But the tracks of the Erie railroad are so near those of the Lehigh Valley that the operation of an interlocker between the relator and the Lehigh Valley would cause great danger, by the rear end of a car derailed reaching over upon the Erie tracks. The operation of the interlocker over any part of the Erie tracks is only necessary in order to make the operation of the interlocker at the crossing of the relator and the Lehigh Valley safe. The Commission was quite right, therefore, in relieving the Erie from any burden on account of the maintenance of the interlocker.

Under the contract between the Lehigh Valley Railway Company and the relator, we think the relator was fairly bound to build and maintain this interlocker. It did recognize the duty of building the interlocker, but denies its obligation to maintain and operate it. The building of the interlocker would be of no use unless it were maintained and operated. The fact that the relator was to build it is quite persuasive evidence that it was to maintain and operate it. But that obligation does not rest on inference alone, for the second provision of the contract required the crossing to be constructed and maintained at the expense of that company, and the interlocker was an incident to and a part of the crossing. We conclude, therefore, that considering the rights of the parties at the crossing the relator should fairly pay the cost of maintaining and operating the interlocker.

It is urged, however, that the particular wording of section 50 of the Public Service Commissions Law contemplates that each company must pay a part of the expense of construction, and inferentially of maintenance and operation, by requiring in the first instance that the construction shall be at joint cost, and that if the parties within thirty days after

the order for the construction at joint cost do not file an agreement " for a division or apportionment of such repairs, improvements, changes or additions, the Commission shall have authority, after further hearing, to fix in its order the proportion of such cost or expense to be borne by each corporation and the manner in which the same shall be paid and secured." The section puts the burden, in the first instance, jointly upon these three companies, and then requires the Commission, if the companies do not agree as to apportionment, to fix the proportion which each is to pay. The fixing of the proportion does not, in my judgment, mean that each party must pay a part. If it had that technical meaning, a requirement that the Lehigh Valley pay a dollar, the Erie pay another dollar and that the relator should pay the balance would be a technical compliance with the provision. That is too narrow a view to take of the section. The Commission is given power to consider the improvement, the relation of the parties to it, and then determine how the cost shall be borne. One pays it all, the others nothing, and if fairness requires such a result the statute is reasonably complied with.

We need not further consider whether the power given to the Commission by that section to fix the cost of the structure carries with it the power to fix and apportion the cost of maintenance and operation, because the stipulation removes that question from the case, and as we understand the position of the appellant, it does not question the power of the Commission to make the apportionment, but it affirms the power, insisting, however, that a requirement that one pay all is not an apportionment.

The determination should, therefore, be confirmed, with fifty dollars costs and printing disbursements.

Determination unanimously confirmed, with fifty dollars costs and disbursements.