WATERLOO, CEDAR FALLS & NORTHERN RAILWAY COMPANY, Appellee, v. CHICAGO GREAT WESTERN RAILROAD COMPANY, Appellant.

RAILROADS: Construction—Crossing Street Car Tracks—Maintenance. Where defendant's first railroad track was laid years before plaintiff's intersecting street car track, and defendant started to lay a second track before plaintiff had done so, but plaintiff procured possession of the crossing from 15 minutes to an hour prior to the defendant, by proceeding to erect, at night, a second track, the plaintiff did not obtain any seniority, and its "scrambling possession" conferred no rights upon it, and it was liable for the expenses of the installation and maintenance of the crossing over the defendant's additional track.

*Appeal from Black Hawk District Court.*—FRANKLIN C. PLATT, Judge.

JULY 1, 1919.

ACTION in equity to determine whether plaintiff should bear the expense of installing and maintaining the crossing of its tracks across one of defendant's side or additional tracks, or whether such expense should be borne by the defendant company. The trial court decreed that plaintiff has a right to lay its street railway tracks along West Fourth Street, in Waterloo, Iowa, and across the tracks of defendant on Bluff Street in said city, where the same crosses or intersects said West Fourth Street; that, at the time plaintiff laid its second track on West Fourth Street, and across Bluff Street, the defendant company had one line of railroad track on said street; that, since the plaintiff laid its second, or double, track on Fourth Street, the defendant company has laid additional track along said Bluff Street and intersecting Fourth Street, and across the tracks of the plaintiff company; that the defendant be enjoined from interfering with the tracks of plaintiff on said Fourth

Street, where the same intersects Bluff Street and are laid across the tracks of defendant company; that plaintiff pay the costs of constructing and maintaining the intersection of its track with the track of the defendant company, which it crosses at the intersection of Bluff and Fourth Streets, already laid at the time plaintiff's track was laid thereover, such cost to include frogs, guard rails, and ties necessary for the construction and maintenance of said crossing; that defendant pay all costs of constructing and maintaining the intersection of its track on the southwesterly side of said Bluff Street, where it crosses or intersects the double tracks of the plaintiff on said Fourth Street, such cost to include necessary frogs, guard rails, and ties; and that the costs of the proceeding be taxed to the defendant. A further statement of the facts appears in the opinion.—*Reversed.*

*Carr, Carr & Evans,* and *Williams & Clark,* for appellant.

*Pickett, Swisher & Farwell,* for appellee.

PRESTON, J.—The action was originally brought for an injunction to restrain defendant from interfering with the track of plaintiff where it crosses Bluff Street, on Fourth, and from interfering with the rights of plaintiff or the operation of its railway at said point, except that defendant should have the right to install and maintain a suitable railway crossing at its own expense, in and on the track of plaintiff company; but the issue was finally resolved into the question as to whether plaintiff shall bear the expense of installing and maintaining the crossing of its tracks across defendant's side track, where the same crosses on Fourth Street, or whether such expense shall be borne by the defendant company. Fourth Street, upon which plaintiff's street car tracks are laid, runs north and south, or substantially so, and Bluff Street runs east and west, or nearly so, so that the tracks which cross each other

at Fourth and Bluff are at substantially right angles. It is conceded in the record that plaintiff had the right to occupy Fourth Street with its tracks, and that defendant also had the right to occupy Bluff Street, and that such rights were granted by the city by franchise or otherwise. The defendant's first track was placed in Bluff Street, and across Fourth Street, years before plaintiff's first track was put in, and plaintiff had installed and was maintaining the crossing over defendant's track. At the time this controversy arose, plaintiff was doubling its track by constructing another track in Fourth Street, and defendant was building its second track in Bluff Street. The question is as to the seniority in regard to defendant's said second track, and whether a "scrambling possession," as it is called in some of the cases, of the particular point of crossing, secured by one a few minutes prior in time, gives seniority. At the time in question, plaintiff's work was progressing towards the crossing on Fourth Street, as was defendant's on Bluff Street. It is argued by appellee that it was in possession of Fourth Street, and that defendant was not yet in possession thereof, nor of the intersection. But, as said, defendants had authority to occupy Bluff Street, and this necessarily gave them the right to cross north and south streets, including Fourth; else defendant's track would be in sections of one block in length.

We shall endeavor to state the nature of the action as briefly as may be, and so much of the evidence only as bears on the question at issue. It appears that, in 1884, the Chicago, St. Paul & Kansas City Railway, defendant's predecessor, was granted a franchise by the city of Waterloo to construct its railway track on and along said Bluff Street and across Fourth Street in said city, and in said year constructed its one-track railway along said street and across Fourth Street, and has, ever since that date, by itself and predecessors in interest, used and operated the

said track in the discharge of its business as a common carrier. This was a number of years prior to the time that the first track of the Waterloo Street Railway Company, now owned by the Waterloo, Cedar Falls & Northern Railway, plaintiff herein, was laid on Fourth Street. The crossing at the intersection of Fourth and Bluff Streets across the track of the defendant company was installed and maintained at the expense of the plaintiff company, long prior to the time of the commencement of this action, and was so maintained when this action was begun. Fourth Street is one of the principal streets of Waterloo, and is paved, as is the intersection of Bluff Street and Fourth Street. A long time prior to June 6, 1910, the defendant railway company had been contemplating double-tracking its road on Bluff Street, where it crosses Fourth Street. The work was started on the 6th of June. It is stipulated by the parties hereto that the defendant had the right to construct, operate, and maintain an additional track on and along Bluff Street at the time of the beginning of the action, and that the plaintiff had the right, on or prior to the 8th of June, 1910, to construct, maintain, and operate a double track for its street car system on and along Fourth Street, under a franchise from the city. The defendant, prior to the 8th of June, had done considerable work on the said side track, and had laid its tracks up to the line of Fourth Street on the east, and within a short distance of the line of Fourth Street on the west. The plaintiff had also done some work in double-tracking its street railway on Wellington Street, but had done no work on Fourth Street. On the night of June 8th, near midnight, the plaintiff company began unloading material on Fourth Street at the intersection of Bluff Street, putting a pile of ties on the line of defendant's side track, so as to prevent it from going forward with the construction of said track. A short time thereafter, defendant's workmen, in

prosecuting the work of constructing said side track, found their way impeded by the said pile of ties, and began moving them out of the way. The plaintiff's officials and workmen interfered to prevent the removal of said pile of ties; and, a controversy having arisen, they called to their aid the police department of the city, which appears to have been waiting for such a call, and caused defendant's workmen to be placed in jail, where they were kept, at the request of plaintiff's general manager, until plaintiff's workmen had completed the work of constructing their tracks across defendant's side track,—at least, that is defendant's contention, and there is evidence that plaintiff's manager did so direct. At any rate, a number of defendant's workmen were kept in jail until the next morning, and in the meantime, plaintiff made the crossing before morning. The next day, plaintiff filed a petition and secured a restraining order upon the defendant from interfering with the track.

Appellant's points for reversal are: 1. The court erred in adjudging and decreeing that defendant shall pay the cost of constructing and maintaining the intersection of its second track where it intersects the double tracks of the plaintiff on Fourth Street. 2. The court erred in enjoining the defendant company from in any manner interfering with the tracks of the plaintiff company on Fourth Street, where the same cross the tracks of the defendant company.

Appellee's points for affirmance are: (1) Defendant's second track was laid subsequent to plaintiff's tracks, and therefore the cost of the crossing should be borne by defendant. (2) The defendant could acquire no rights at the point in question until it actually had laid its track. The right to lay its track at that place gave it no right that interfered with the plaintiff's laying its tracks. The im-

portant point is occupancy of the *locus in quo* with the tracks, and not the right to lay the tracks.

As said, the defendant began the work of double-tracking its road on Bluff Street, on June 6, 1910. It was stipulated that plaintiff company began to lay its double track on Fourth Street on the 8th of June. Plaintiff's testimony shows that, when plaintiff attempted to lay the double track on the night of June 8th, they came to the crossing with materials, rails, and ties, which were unloaded, and then started tearing up the paving, to lay down the two tracks. Soon after this, the Great Western men came up, and started to work along the defendant's new track. Defendant had 30 or 40 men at this point. The first obstruction that defendant's men met with, was when they came up to the Fourth Street pile of ties, which plaintiff had placed there, and in front of the track which they were preparing to lay down. When they came to the pile of ties, they either had to stop or remove the ties, and they proceeded to remove the ties. There was a collision between the opposing forces, and a riot. Plaintiff's manager says that the Great Western men undertook to prevent plaintiff from putting in the crossing by merely moving a switch engine over the crossing each five minutes, to conform with the city ordinance. He says it prevented them from putting in the crossing, but did not prevent them from laying the double track; that, after defendant's men were arrested, plaintiff proceeded to lay the double track, and in the morning, they had two lines of track there, running from the Great Western line to Fourth Street, about 200 feet; that defendants put their second track across Fourth Street several days after the injunction. He says he knows that defendant commenced laying its track some time before June 8th; that his company saw the tracks of the Great Western coming, and presumed that the result would be that they would cross Fourth Street. He says that his

company placed the ties in front of the proposed track of the defendant, to place an obstruction in its way; that there were about 200 ties, and they would lay 600 feet of track; that they put the ties there to stop the defendant from going any further, and expected the obstruction to prevent them from going any further; that the first thing they did, the night of June 8th, when they reached the crossing, was to unload the ties and put them directly in line of defendant's track, or where it would have been; that plaintiff had not taken out any of the paving brick' prior to the time they had the arrest made, about 2 o'clock A. M.; that the defendant did not take out any brick before that, but made some effort to do so; but that their men were dodging brick most of the time; that they had done no work on double-tracking prior to June 8th, except on another ·street; that plaintiff laid these tracks on the night of June 8th, for the sole and only purpose of getting these tracks in prior to the time the Great Western would be able to construct its additional track across Fourth Street, in order to have priority of time in the construction of the track at West Fourth Street; that they started to work on Fourth Street immediately after they got the injunction. This witness, plaintiff's manager, says that he was standing there, and told defendant's men to stop moving the ties; that he made requests, commands, and everything else; and that they tried to force their way through, by removing the ties; and he then telephoned the police station. He says the trouble started about the removal of the obstructions that plaintiff had placed in the street; that defendant's men had been making excavations and removing brick before they came to the pile of ties.

There is other evidence of plaintiff's other witnesses along this line, and we have not attempted to set it out in very much detail. It may be that the evidence for defendant puts a somewhat different coloring to the transaction.

Counsel for appellee denominate the acts of the defendant and its men as a high-handed proceeding. We have set out a part of the testimony bearing on this proposition; but, from a reading of the entire record, we are satisfied that plaintiff is entitled to seniority in this respect at least.

It is claimed by appellee that it had possession of the point of crossing in controversy from 15 minutes to an hour prior to defendant; but we think that, under the record and under the authorities, it was such possession as that from it alone no rights can be secured. Plaintiff argues that the ordinary commercial railroad, private right of way, gives the railroad an interest in the land which cannot be appropriated without compensation. No compensation is claimed here, as we understand it. But appellees say that, even though, under the circumstances before stated, there is a property right, they concede that the fee of the street at the location in question was in the city, and that, therefore, defendant had no property rights in the street, nor a right of way, within the ordinary meaning of the term; and they say further that the city may compel a steam railroad to install gates, etc., and that a street railway operating under municipal authority may construct its line along a public street and cross the tracks of a steam railway without condemnation proceedings or paying damages therefor, and that, when a steam road places its tracks upon a street, it must know that they may be crossed later by a street or interurban railway, and that it accepts its franchise upon such understanding. But the main contention is that it is priority in the construction of a railroad track within a street that determines seniority, and in the obtaining of a franchise or the construction of a track; in other words, that the company first constructing its track is the senior as to that particular track. They contend that neither defendant's right, acquired from the city, at the Fourth Street crossing, nor the state law gave it any rights in Fourth

Street until it had actually taken possession of Fourth Street for the purpose of constructing its second track; and that, as this was subsequent to the plaintiff's constructing its double track along Fourth Street, the defendant's second track is junior, and therefore the cost should be borne by the defendant. On the other hand, it is contended by appellant that the expense of constructing the crossing must, as a rule, be borne by the company seeking the crossing, and that, in the absence of statutory enactments regulating it, the latest company must, at its own expense, construct the crossing; and on this they cite 3 Elliott on Railroads (2d Ed.) Sections 1127, 1128; *Central Pass. R. Co. v. Philadelphia, W. & B. R. Co.*, 95 Md. 428 (52 Atl. 752) ; *West Jersey, etc., Co. v. Atlantic City & S. Tr. Co.*, 65 N. J. 613 (56 Atl. 890) ; *Kushequa R. Co. v. Pittsburg, S. & N. R. Co.*, 200 Pa. 526 (50 Atl. 169) ; 33 Cyc. 250. See *People v. Public Serv. Com.*, 180 App. Div. 773 (168 N. Y. Supp. 331). They contend, also, that there is nothing in our statutes which conflicts with the foregoing well-settled rule, and they say that, on the contrary, our statute, Section 2020, by implication at least, recognizes the rule. Appellant also contends that the defendant, being the senior road and first to occupy the ground where the crossing is constructed, does not lose its rights as the senior company, with respect to an additional track or side track, although such track is not constructed at the time the junior road constructs its tracks over those of the senior road. Where two railroads intersect at a grade crossing, the road first to occupy the crossing is not senior as to some of its tracks laid down on such crossing and junior as to others, nor can the latest road obtain seniority over part of the tracks of the senior road, while remaining junior as to other tracks. The right of the senior road to the use of the street as against the public generally is not exclusive; but as against the junior road, seeking to cross it, its rights are

precisely the same as they are where it owns or has acquired by condemnation its right of way. *Central Pass. R. Co. v. Philadelphia, W. & B. R. Co.*, 95 Md. 428 (52 Atl. 752).

The appellee disputes this legal proposition; and whether it is the rule in this state or not, it is unnecessary to determine, because, under the evidence, we think the manner in which plaintiff first secured possession of the intersection in question for a few minutes may not be relied upon as giving it seniority. On this proposition we are cited to *Spiers v. Duane*, 54 Cal. 176, *Lobdell v. Keene*, 85 Minn. 90 (88 N. W. 426), *Dyer v. Reitz*, 14 Mo. App. 45, as holding that a railroad company constructing tracks over the line of another railroad company cannot obtain seniority by force, fraud, or intimidation, and that no rights are based upon occupancy or possession of the land at the crossing, where such possession or occupancy is obtained in that manner; and that a possession thus obtained is denominated by the courts a "scrambling possession," from which no rights can be secured. We think that, under the record in this case, the plaintiff was not, in fact, prior in the construction of its tracks at the intersection in question, and that it obtained no prior possession of the ground over which the defendant was constructing its additional track, which conferred upon it the rights claimed. The *Lobdell* case, supra, was where a landlord forcibly held the tenant, while possession was being taken by another. But the case recognizes and applies the principle that a possession of real estate so acquired confers no rights upon the party so acquiring it; and we think that principle should be applied to the facts in this case. The facts have been sufficiently set out, and we shall not now repeat.

It is our conclusion that the trial court erred in requiring defendant to pay the cost of installation and maintenance of the crossing as to defendant's additional track.

Plaintiff should pay therefor, same to include necessary frogs, guard rails, and ties. There appears to be no necessity for an injunction now. It is dissolved and denied. The decree of the district court will be reversed. Defendant may, at its election, have a decree in this court, in accordance with the opinion.—*Reversed.*

LADD, C. J., EVANS and GAYNOR, JJ., concur.